**CREATIVE ENVIRONMENTS, INC.,
et al.**

v.

**Robert R. ESTABROOK et al.**

**Civ. A. No. 76–453–Mc.**

United States District Court,
D. Massachusetts.

June 17, 1980.

(2) members of the Board of Selectmen and the Law Committee of the Town of Bolton (Pierino A. Bonazzoli, Robert N. Mechlin and Francis G. Mentzer, Jr.);

(3) members of the Law Committee of the Town of Bolton (Waldo G. Henry and the Estate of Robert G. Horton);

(4) members of the Conservation Commission of the Town of Bolton (Warren K. Colby, Robert J. Held, Walter H. Phillips, Bonnie B. Potter, Eric F. Salmela, Richard W. Sullivan and Wayne D. Wetzel, Jr.);

(5) Town Counsel of the Town of Bolton, Arthur S. Hill, Esq.;

(6) Environmental Research and Technology, Inc. and Scott McCandless;

(7) all defendants collectively called the municipal defendants, except for members of the Planning Board, with a motion directed toward the prayer for a mandatory injunction in the complaint; and

(8) all municipal defendants, including members of the Planning Board, on a motion to dismiss Count II which seeks a declaratory judgment.

Edward P. Leibensperger, Nutter, McClennen & Fish, Boston, Mass., for plaintiffs.

Joan A. Lukey, Jane D. Kaplan, Hale & Dorr, J. Christopher Robinson, Sullivan & Worcester, Boston, Mass., for defendants.

## MEMORANDUM AND ORDERS ON MOTIONS FOR SUMMARY JUDGMENT

McNAUGHT, District Judge.

This action came on to be heard on motions for summary judgment filed by:

(1) members of the Planning Board of the Town of Bolton (Robert Estabrook, Robert Fischer, Ronald Kelley, Berneda A. Serfass, Gordon Slater and Thomas Murphy, named as defendants in such capacities);

## BACKGROUND

These motions for summary judgment are directed at claims of violation of the Civil Rights Acts, Title 42, U.S.Code, §§ 1983, 1985(3) and 1986. The plaintiffs are Creative Environments, Inc. (CEI), a Massachusetts corporation, and its President, Majority Shareholder and Chief Executive Officer, Wayne E. Barber. The defendants are elected or appointed officials of the Town of Bolton, Massachusetts, a corporation known as Environmental Research and Technology, Inc. (ERT), and an employee of that firm, Scott McCandless. ERT is a Delaware corporation, with a place of business in Concord, Massachusetts. It is engaged in the business of environmental consulting. It should be noted that Scott McCandless, the ERT employee, is a resident of the Town of Bolton.

The Town of Bolton itself is a party defendant to this action, having been added as a party on August 16, 1978. The Town filed a motion to dismiss Count IV of the Complaint. This motion has become moot by reason of a stipulation of dismissal being entered into by the parties as of June 13, 1980.

The plaintiff CEI is in the business of real estate development for the construction and sale of residential housing. The basic claim as against all of the defendants, in the amended complaint, is that the Town officials, ERT and McCandless conspired over a period from October 1973 to December 1975 to deprive the plaintiffs of constitutional rights, under Title 42, U.S.Code, §§ 1983, 1985(3) and 1986.

The following facts appear to be undisputed. CEI planned the purchase of a 183-acre parcel of land in the Town of Bolton, intending to build approximately 90 homes on that parcel, in clusters. The homes would be erected on lots of 1.5 acres (required by the zoning ordinances), but would not necessarily be on rectangular lots. The "cluster" concept would have four houses located close together, sharing common services with land around the houses left open in a natural wooded state. A subdivision was contemplated, consisting of a number of clusters, plus common facilities. It allegedly, was anticipated by the plaintiffs that homeowners in the subdivision would own group facilities in common, and would organize in an association in which each homeowner would automatically become a member. The plaintiffs anticipated that the members, acting under bylaws, would not only govern the use of common facilities, but might perform other functions, both social and "political". CEI bought the property. Mr. Barber, by way of his deposition, states that the members of the Conservation Commission were apparently impressed by the design concept, but that members of the Planning Board and the Board of Selectmen were negative immediately. (Barber Dep., Vol. 5, pp. 66–68.)

A preliminary subdivision plan was submitted to the Planning Board on December 3, 1973. (Barber Dep., Vol. 3, p. 6.) The cluster aspect of the original concept was contained within it, but it contemplated a "gerrymandered" layout of the lots.

According to his deposition, Scott McCandless resided in the Town of Bolton from December of 1973. He became a reporter for the Bolton Citizens News. He covered the activities of the Bolton Planning Board for the next one to one-and-a-half years.

On February 1, 1974, the Bolton Planning Board, in a letter to Barber, disapproved the preliminary plan. (Barber Answer to Ints., No. 22(c).) Certain defects were noted by the Board. The Town, on July 2, 1973, had adopted a subdivision Regulation 3.3.1.28 which required land developers to file with the Planning Board environmental and financial impact studies endorsed by a professional planning engineer which demonstrates "that all available alternatives have been explored and evidence is provided that the plans submitted represent the best interest of the Town."

On March 11, 1974, Mr. Barber submitted a "Response" to this section of the subdivision regulations.

On July 30, 1974, Mr. Barber submitted a definitive subdivision plan to the Planning Board. (Barber Dep., Vol. 3, p. 65.) In August of 1974, Thomas Murphy, Vice Chairman of the Planning Board, asked the defendant McCandless if he would review the CEI study for the Board. McCandless, by reason of his position in the Town, stated that he did not believe that an evaluation of the study by him would be credible. (McCandless Dep., pp. 18–19, 37–38.) He asked his employer, ERT, to do the evaluation, and ERT so agreed. ERT was hired to do the job for $400.00.

In September of 1974, ERT submitted a report critical of the Barber study. The report concluded that the methodology utilized by the study was acceptable, but that the CEI study's application of impact criteria appeared to be highly subjective and non-uniform. A controversy existed concerning the validity of Regulation 3.3.1.28. On September 23, 1974, Arthur Hill, Town

Counsel, sent a letter to the Planning Board. The following day he wrote a second letter to the Board. In this second letter he stated: "I cannot find anything (in Chapter 41, § 81Q of the General Laws) which allows the Planning Board to make this type of regulation." He told the Board not to consider the content of any environmental impact report in determining whether to approve CEI's definitive plan.

On September 26, 1974, the Planning Board disapproved CEI's definitive plan. (Minutes of Planning Board Meeting, 9/26/74.) Seven reasons were given in the rejection letter. They did not have to do with CEI's environmental study or ERT's report.

On October 16, 1974, CEI commenced an action under Mass.General Laws, Ch. 41, § 81BB, to challenge the Planning Board's decision.

On November 26, 1974, an amendment to the Town's Zoning By-law, 2.3.3, was approved, and became effective February 13, 1975, prohibiting gerrymandered lots. On January 30, 1975, by which time CEI had submitted revisions to its definitive plan, the Planning Board conditionally approved the revised plan. On March 10, 1975, CEI submitted further revisions and the Planning Board again approved the definitive plan, but subject to a condition that CEI grant to the Town, in perpetuity, open space which CEI had offered earlier.

On April 10 and 11, 1975, the Chapter 41, § 81BB action went to trial. The issue was whether CEI would have to comply with the granting of the open space, in perpetuity and free of charge, in order to obtain subdivision approval. Associate Justice John Meagher of the Massachusetts Superior Court for Worcester County ordered CEI, subsequent to the trial, to submit the open-space plan to the Planning Board again. Mr. Justice Meagher held that the Planning Board could not make a grant of open space in perpetuity free of charge a condition for approval of the definitive plan, and remanded the matter back to the Planning Board to act in accordance with the subdivision control law.

Plaintiffs contend (p. 15 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment) that "(D)efendants conspired to use the judgment as a weapon to continue the conspiracy." On June 16, 1975, the Planning Board required CEI to submit another subdivision plan. Subsequently, CEI sought additional relief from the Superior Court, by way of a Petition for Contempt. The court refused to grant a hearing on this petition.

In the fall of 1975, a new regulation was adopted by the Town drastically increasing the filing fee required for new subdivision plans.

## THE SECTION 1983 ISSUES

I assume, for the purposes of this motion only, that all of the defendants, the so-called municipal defendants and ERT and its employee McCandless, were acting under color of law. The municipal officials, of course, are entitled to a qualified immunity which is not enjoyed by the municipality itself. *Owen v. City of Independence*, —— U.S. ——, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). I have culled the pleadings, affidavits, answers to interrogatories and depositions, and find nothing by way of evidence or the promise of evidence which could be considered by a factfinder, directly or by way of supporting a reasonable inference of intentional violation of the constitutional rights of the plaintiffs, or of reckless disregard of the civil rights of the plaintiffs. If, in fact, ordinary errors were committed by any of the public officials involved in this litigation, I find nothing which suggests bad faith on the part of anyone. I conclude that, although plaintiffs have had approximately four years to demonstrate that such an issue exists, having been put to the test by the affidavits submitted in support of the defendants' motions, plaintiffs have failed to do anything more than offer conclusory allegations and suspicions arising out of their disappointment.

Defendants point forcefully to the Regulation 3.3.1.28, which was adopted July 2,

1973, and which may have been delivered in writing to the plaintiffs, leading them to believe that the regulation was in force and effect prior to the actual effective date of the amendment. Plaintiffs point to the fact that the Town Clerk had not filed the amendment in the Registry of Deeds. They complain of the "widest possible discretion over an applicant's subdivision plan." (Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment, p. 19.) The validity of the regulation might have been subject to attack. Such has been true of countless regulations adopted by municipalities. Plaintiffs complain that this regulation was "used" by all of the defendants. On September 25, 1974, the Planning Board had received a letter from Town Counsel giving his opinion that the regulation was beyond the powers of the Town. Twenty-four (24) hours before the Town Counsel, apparently in good faith, had harbored a different view. Plaintiffs necessarily indulge in the assumption that the regulation in question exceeded the authority of the Planning Board. This assumption may or may not be warranted. Even assuming invalidity, I am of the opinion that this does not demonstrate in any way bad faith on the part of the so-called municipal defendants. I have considered the activities of the Planning Board, the Conservation Commission (the members of which allegedly advised the Planning Board to disapprove the preliminary plan), the Law Committee members who approved the pleading which was filed in the Superior Court proceeding and oversaw the pending litigation, and the Selectmen, as well as Town Counsel. I find nothing anywhere to suggest that any individual intentionally or recklessly acted to affect the constitutional rights of the plaintiffs.

The procedures employed by the municipal defendants did not constitute a distortion, deliberately engaged in, to the detriment of the plaintiffs' enterprise.

I fail to see anything in the conduct of ERT and/or Mr. McCandless to support a factual finding of a violation of constitutional rights of the plaintiffs. Plaintiffs have shown nothing (other than suspicion and conjecture) beyond ERT's submission of a report for the grand sum of $400.00. This report did not even form a basis for the ultimate adverse decision by the municipal officials concerning plaintiffs' plan. As for Mr. McCandless, all that the evidence shows is that Mr. McCandless did not desire to do a study and make a report because of his personal involvement in town affairs. Such evidence certainly would not support an inference of the violation claimed by the plaintiffs in this case. The passage of the new filing fee regulation, after a hearing at which Mr. McCandless stated that the fee was not nearly high enough, adds nothing. As a resident of the Town he was entitled to speak at a public hearing.

I conclude also, after a study of these materials, that the action complained of on the part of all defendants jointly did not subject plaintiff CEI or Mr. Barber to the deprivation of rights, privileges or immunities secured by the Constitution and Laws of the United States. The nub of the plaintiffs' claim is that CEI and Barber were prevented from building the subdivision that they contemplated and from eventually forming a homeowners' association. They say that this was motivated by political concerns. (Plaintiffs' Memorandum in Opposition, p. 74.) They say that they were deprived of "the equal enjoyment of rights secured by the law to all." They argue that, had a homeowners' association eventually been formed, such association would have had political potential, and that the exercise of such potential cannot be realized by reason of the conduct of the defendants in this case. Counsel on argument, of course, conceded that one could have no idea of the type of person who would be a member of the class of homeowners, in the event that such an association ever came into being. One couldn't possibly identify the political potential. One would have to indulge in conjecture with respect to political leanings of such a group.

I am unable, therefore, to conclude that, even if there were intentional conduct or conduct characterized by reckless disregard for the rights of CEI and Mr. Barber, CEI

and Barber were deprived of any constitutionally protected right. One does not have a constitutional right to construct a subdivision employing the "cluster concept." Neither can I visualize any deprivation of equal rights. I know of no federally protected right to "cluster", nor have plaintiffs indicated in any way what could be claimed to be a denial of equal rights.

I have considered seriously the contention of plaintiffs that the requirement of the Town's rules and regulations for "open space"—requiring a percentage (10) to be reserved for park and playground purposes—constitutes the taking of land without just compensation. At page 47 of their Memorandum, the plaintiffs call the attention of the court to the General Laws, Ch. 41, § 81Q, which forbids planning boards' imposing as a condition for the approval of a subdivision plan the dedication of land within the subdivision to a public purpose without granting just compensation to the owner. It is interesting to note that, despite this claim, CEI at one time agreed to provide open space if its plan was approved substantially as submitted. (Page 48, Plaintiffs' Memorandum.) It is also to be noted that the reasons for disapproval made no reference to the amount of open space in the plan. In December of 1974 and in January of 1975, CEI offered open space in perpetuity in exchange for approval of its definitive plan. In March of 1975 (Plaintiffs' Memorandum, p. 52), the Planning Board noted that it was CEI who withdrew the offer to grant open space in perpetuity, and limited the grant to a three-year period. One cannot escape the conclusion that the open space notion was precipitated by offers made by the plaintiffs, regardless of the validity of the regulation in question. The evidence concerning the events following the trial in Worcester Superior Court provide no basis for finding an intentional deprivation of constitutional rights. Neither do they provide, by way of direct or inferential possibilities, the finding of bad faith violation in the form of reckless disregard. It appears that the plaintiffs' contentions are best summarized at page 64 of their memorandum in opposition, wherein plaintiffs state that the "Town officials sought to deprive CEI of its right to own, develop and alienate its property, to obstruct CEI from operating as a business and to make a profit, to take from CEI certain portions of its property without compensation and to deprive CEI from organizing and establishing the homeowners' association. In doing so the Town officials denied CEI basic fair treatment in consideration of the application and, accordingly, deprived CEI of procedural due process." Plaintiffs necessarily assert that the defendants subverted and distorted the subdivision control law and regulations promulgated thereunder. Without such claim plaintiffs could not state a cause of action. *See Moran v. Bench*, 353 F.2d 193 (1st Cir. 1965), *cert. denied* 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1965). The problem is that there is no evidence—there is only speculation and conclusory allegation—that this group of people intended all along to deny the application of the plaintiffs without providing procedural due process of law. *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977), stands for the proposition that a complaint under § 1983 which alleges facts to support the essential claim of purposeful discrimination, or knowing or reckless or willful conduct equivalent to the same, states a cause of action. We are dealing here not with the sufficiency of the complaint, but with an absence of proof. There is nothing here, in my opinion, which would warrant direct or inferential finding of an agreement express or implied to thwart the ambition of the plaintiffs. The Court of Appeals, in *Kadar Corp., supra,* cited *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943), in its discussion of the sufficiency of allegations. From *Snowden*, the phrase "opprobrious epithets" of malice and discrimination was employed to demonstrate the futility of conclusory allegations in a § 1983 action. At this stage of this action, where the court is asked to determine whether trial is warranted, opprobrious epithets are certainly sufficient.

### THE SECTION 1985(3) ISSUE

The defendants are entitled also to summary judgment in their favor as a

matter of law with regard to the cause of action claimed under Title 42, U.S.Code, § 1985(3). Recovery under § 1985(3) must be predicated upon more than simply conspiratorial interference with the rights of others. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), teaches that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the alleged conspirators' action. The Court of Appeals for the First Circuit, in *Harrison v. Brooks*, 519 F.2d 1358, at 1359–60 (1975), defined the requirements of a sufficient complaint under this section. While there is some doubt that a discriminatory motive other than racial bias might be within the reach of this section, this doubt does not form the basis of my opinion that the defendants are entitled to summary judgment. There is no definable class in this case, and nothing has appeared, despite three to four years of discovery, which would warrant findings of conspiracy, invidious animus, or definition of an actual class. Plaintiffs must concede that a class of persons making up the homeowners' association is still but a possibility. Were such a class to have come into existence, one could not tell what its makeup would have been numerically with respect to race, sex, religion or political leanings. There could not have been a conspiracy against plaintiffs by reason of their membership in a class. There are no characteristics by which the class can be defined. Nothing by way of evidentiary material has been offered to show what the class membership would have been. The fictional class is without substance.

## THE SECTION 1986 ISSUE

Summary judgment is granted in favor of the defendants on this aspect of the action, since claims pursuant to § 1986 must fall upon rejection of the § 1985 claims. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975). There is nothing by way of evidentiary material to show that the municipal defendants knew of any wrongful conduct on the part of others than themselves. Additionally, it should be noted of course that there is a one-year statute of limitations, and that, had this motion for summary judgment not been allowed in its entirety, partial summary judgment would have to be granted for any activity occurring more than one year prior to the filing of the complaint.

## THE DECLARATORY JUDGMENT ISSUE

The so-called municipal defendants, elected and appointed officials of the town, filed a motion to dismiss Count II (sic) which seeks a declaration that regulations of the Planning Board of the Town of Bolton are unlawful and invalid as applied to the plaintiffs. The plaintiffs have claimed that: "This court has jurisdiction over this Count by virtue of its jurisdiction over the plaintiffs' claim under 42 U.S.C. §§ 1983, 1985 and 1986, set forth in Count I." See ¶ 110, Amended Complaint, p. 63. Having granted summary judgment in favor of defendants on the §§ 1983, 1985 and 1986 issues, the foundation for the alleged jurisdiction over the declaratory judgment issue disappears. Plaintiffs allege that these regulations are unreasonable, invalid and contrary to law. This was an issue which was open to them precisely for determination in state court proceedings. Once the order of remand had been entered by the Justice of the Superior Court, the plaintiffs abandoned further proceedings within the Commonwealth's system. They are not entitled to have this court make the determination which they seek. The subject of the powers of a Planning Board under the Massachusetts Subdivision Control Law is a matter which is particularly within the interest of the courts of the Commonwealth of Massachusetts. A federal court under these circumstances should not issue a declaratory judgment. It appears that this motion should have been directed to Count III of the Amended Complaint (p. 62 thereof). The motion, therefore, as it is directed to the declaratory judgment count, is allowed.

## THE ISSUE OF THE PRAYER FOR INJUNCTION

The municipal defendants, other than the Planning Board members, move for summa-

ry judgment on the prayers for a mandatory injunction. At the conclusion of Count I, CEI prays that the court "1. Enter a permanent injunction against Defendants restraining them from continuing to violate CEI's civil rights as alleged in this complaint and ordering them to act upon CEI's definitive plan for Appleton Ridge as submitted on July 30, 1974 (including all revisions thereto) in accordance with all lawful rules, regulations and statutes for the subdivision of land." (Amended Complaint, p. 60.)

This motion, in the light of the foregoing discussion, must be, and is hereby, allowed.