Linda MALDONADO SANTIAGO,
Plaintiff, Appellant,

v.

Nestor VELAZQUEZ GARCIA, et al.,
Defendants, Appellees.

No. 86–1191.

United States Court of Appeals,
First Circuit.

Submitted March 4, 1987.

Decided June 5, 1987.

Luis Angel Lopez Olmedo, Santurce, P.R., on brief, for plaintiff, appellant.

Vannessa Ramirez, Asst. Sol. Gen., Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., Hato Rey, P.R., on brief, for defendants, appellees.

Before BOWNES and SELYA, Circuit Judges, and PETTINE,[*] Senior District Judge.

PETTINE, Senior District Judge.

This appeal concerns a due process damages claim filed by the appellant pursuant to 42 U.S.C. section 1983 and dismissed by the district court after a non-jury trial in January, 1986. The appellant claims that during the period of her incarceration in Puerto Rico, she was subjected to a prison transfer and post-transfer hearing that failed to comport with the requirements of due process. Because we find that a due process violation occurred for which at least nominal damages might be recoverable, we reverse the decision of the district court and remand the case for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND [1]

The events giving rise to the appellant's claim occurred over a seventeen-day period in July and August, 1983. The appellant, Linda Maldonado Santiago ("Ms. Maldonado"), was then incarcerated at the Vega Alta women's correctional institution ("Vega Alta") in Vega Alta, Puerto Rico. The three appellees held positions in the Puerto Rico Correctional Administration at that time. Nestor Velazquez Garcia ("Mr. Velazquez") was an official at Vega Alta who served as its acting superintendent on the evening of July 23, 1983. Felipe Torres Torregrosa ("Mr. Torres") served as the director of security programs for the Puerto Rico Correctional Administration. Jorge Collazo Torres ("Mr. Collazo") served as director of the Correctional Administration.

On the evening of July 23, 1983 a fight broke out between two inmates in one of the living quarters at Vega Alta. Ms. Maldonado went to the scene of the fighting, for reasons that remain in dispute: she contends that the fight occurred in or near her own living quarters and that she sought to break it up, whereas the appellees contend that she rushed to the scene to see the fight. Sergeant Curbolo, a custody officer, arrived on the scene, unsuccessfully tried to stop the fight and sent a second custody officer for reinforcements. The second custody officer went to the prison's administrative office and summoned a third custody officer ("Mr. Pellicia") and acting superintendent Velazquez to the scene.

Mr. Velazquez ordered Mr. Pellicia to take one of the fighting inmates away from the scene, but she resisted his efforts. The two engaged in a scuffle, which apparently led a number of prisoners to rush towards them. The appellees contend that Ms. Maldonado "agitated" the other prisoners, shouting profanities at Mr. Pellicia and other prison authorities, whereas Ms. Maldonado contends that she had helped stop the fight prior to Mr. Pellicia's arrival and that he attacked a prisoner without justification.

---

[*] Of the District of Rhode Island, sitting by designation.

[1] Following the district court's denial of the appellant's motion to proceed *in forma pauperis* on appeal, the appellant elected to proceed under Fed.R.App.P. 10(c), which permits a statement of the evidence to be substituted for a transcript of the proceedings below. The appellant prepared summaries of the evidence, and these were initialed by the appellees and approved by the district court, consistent with Rule 10(c). The recitation of facts herein is therefore condensed from these summaries and the parties' briefs, pointing out matters that remain either disputed or unclear.

Conflicting testimony indicates that Mr. Pellicia threw a can of tear gas into the crowd of inmates gathered around him. About that time the prison's "clash force" arrived on the scene and broke up the encounter by throwing tear gas and shutting off the lights and water in the area. Order was restored a short time later.

That same evening, Ms. Maldonado was placed in an isolation cell at Vega Alta, where she remained until 2:00 p.m. the following day, July 24, 1983. While she was in isolation, acting superintendent Velazquez telephoned the director of security, Mr. Torres, requesting and receiving authorization to transfer Ms. Maldonado to another prison. Both her placement in isolation and her transfer were governed by disciplinary rules promulgated by the director of the Correctional Administration pursuant to P.R.Laws Ann. tit. 4 section 1113(*l*).[2] Disciplinary rule 22 carves out an exception from other rules that require inter-prison transfers and intra-prison status changes to be preceded by administrative hearings. The rule enumerates seven types of emergency situations during which the prison superintendent may temporarily isolate or transfer a prisoner without a prior hearing. In addition to satisfying one of the enumerated criteria, the transfer must "never last for more than the time required ... to maintain the state of security and institutional discipline that will avoid one or more persons suffer[ing] corporal harm and will prevent ... the property of the state suffer[ing] destruction or damage." In any case, an administrative hearing must be held "within the seven working days" after the emergency action, to determine whether the situation that gave rise to the action persists.

Although the record refers only to rule 22(c), the testimony suggests that Ms. Mal-

donado's transfer was predicated on both 22(c) and 22(e). Rule 22(c) permits emergency seclusion or transfer when necessary to prevent a prisoner's "suffer[ing] harm or ... inflict[ing] it to others." Rule 22(e) permits the same "[i]n cases of riot or insurrection."

On the afternoon of July 24, 1983 Ms. Maldonado and one other prisoner were transferred to the women's ward of the Guyama correctional institution ("Guyama"), located in Guyama, Puerto Rico. The two transferees spent one night in an admission cell with three other women, then were transferred to a maximum security cell, which they shared with two other women. Ms. Maldonado alleges that her life was put at risk by her transfer, owing to the crossfire of gang rivalries that she faced at Guyama. First, she suggests that her husband was a known member of a gang opposed by the predominant men's gang at Guyama. Ms. Maldonado contends that she warned acting superintendent Velazquez of this fact on the day of her transfer. Second, she alleges that her cellmates included the killers of a woman who had been affiliated with the predominant men's gang at Guyama. According to Ms. Maldonado's testimony at trial, custody officers at Guyama revealed that some of the male inmates wanted to break into her cell and avenge the killing committed by her cellmates. Ms. Maldonado contends that these threats caused her headaches and anxiety for which she received treatment at Guyama and from which she suffered irreparable psychological injury.

Pursuant to disciplinary rule 22, Ms. Maldonado was entitled to a post-transfer hearing on Thursday, August 4, 1983.[3] The hearing took place on Monday, August 8, 1983, two days late by the terms of rule 22 and four days after the date required by

---

**2.** P.R.Laws Ann. tit. 4 section 1113 enumerates the powers held by the director of the Correctional Administration. Section 1113(*l*) confers on the director the power "[t]o approve, amend and repeal regulations to implement this chapter, which shall have the force of law."

**3.** Rule 22 requires a post-transfer hearing within seven *working* days. Ms. Maldonado was transferred to Guyama on Sunday, July 24, 1983. Monday, July 25 and Wednesday, July 27 were local holidays. These along with the intervening weekend caused the seventh working

the rule.[4] The hearing examiner, Emilio Medina Bernard ("Mr. Medina"), testified that he was the only hearing examiner employed by the Correctional Administration and that he scheduled Ms. Maldonado's hearing on the first available day. The summary of Mr. Medina's testimony does not clarify when he received notice of her transfer or who was responsible for providing such notice. At the post-transfer hearing, the superintendent of Vega Alta, Alice V. Vasquez Castro, testified that the conditions giving rise to Ms. Maldonado's transfer no longer persisted. Mr. Medina therefore ordered Ms. Maldonado's immediate return to Vega Alta, and she returned the following day.

Ms. Maldonado submitted a pro se complaint that was filed on January 10, 1984, challenging the validity of her transfer to Guyama and claiming damages under 42 U.S.C. section 1983 for emotional distress and irreparable psychological damage. On November 30, 1984, after obtaining legal counsel, Ms. Maldonado filed an amended complaint, again challenging the validity of her transfer and again seeking damages for both mental distress "suffered during ... her stay at the Guyama Regional Jail," and "irreparable psychological damage from the fear of losing her life during ... her detention in Guyama." Although not raised in the initial complaints, the due process implications of the lateness of the post-transfer hearing were argued in defendant-appellee Collazo's motion for summary judgment and in the appellant's objection thereto, and the issue was addressed in the district court's final ruling.

After hearing testimony on January 14 and 15, 1986, the district court issued a ruling from the bench dismissing the appellant's case. The district court held that neither the initial rule 22 transfer nor the late post-transfer hearing presented actionable due process violations under 42 U.S.C. section 1983. The court specifically found, *inter alia*, the following: acting superintendent Velazquez reasonably believed he

faced a riot situation on the evening of July 23, 1983; Ms. Maldonado was a leader in the penal community who instigated disobedience that evening; Guyama was no more dangerous for her than Vega Alta; Ms. Maldonado's psychological problems all pre-existed her rule 22 transfer; and no earlier hearing date was possible, both because only one hearing examiner was available and because superintendent Alice V. Vasquez did not make herself available to testify until Monday, August 8, 1983.

## II. DISCUSSION

The appellant challenges the district court's findings of fact and rulings of law. In addition, she claims that the district court displayed prejudice against her case through certain allegedly hostile instructions addressed to her attorney. Four separate issues are therefore presented for review: first, whether the appellant's due process rights were violated by the circumstances attending her transfer and post-transfer hearing; second, if a due process violation is found, whether such violation is compensable in damages; third, if compensable injury is found, whether any of the named appellees can be held liable; and fourth, whether there existed any prejudice at the appellant's trial that affects our disposition of the case.

### A. Due Process

The appellant contends that her due process rights were violated both by her initial transfer to Guyama and by the lateness of her post-transfer hearing. As to the first, the district court ruled that the transfer was proper because "Sergeant Nestor Velazquez had reason to believe that employment of Rule 22 of the Disciplinary Procedure Rules was proper under the circumstances. He was faced with a riot situation and ... this plaintiff instigated the disobe[dience] during the incident and ... she was a leader of the penal community."

day to fall on August 4, eleven days after the transfer.

**4.** This discrepancy is attributable to the two intervening weekend days, Saturday, August 6 and Sunday, August 7.

■ The appellant argues that her rule 22 transfer was unjustified because she neither instigated disobedience nor functioned as a leader among her fellow prisoners.[5] She is therefore seeking reversal of the district court's ruling on this point by arguing that it is premised upon erroneous factual findings. Under Fed.R.Civ.P. 52(a), the district court's factual findings shall not be set aside unless clearly erroneous. Here, the evidence makes clear that the fight between two prisoners and the prison authorities' attempts to break it up caused an outburst of sentiment against the prison authorities in which Ms. Maldonado participated. Whether that outburst presaged a potential riot and to what extent Ms. Maldonado participated therein remain disputed facts. A number of witnesses testified that Mr. Pellicia and Mr. Velazquez faced an angry crowd of over twenty prisoners, and that Ms. Maldonado played a prominent role in the evening's encounter. In light of such evidence, we cannot find clear error in the district court's approval of Mr. Velazquez's decision to transfer Ms. Maldonado pursuant to rule 22. By upholding the district court's ruling that rule 22 was properly applied, we need not decide whether improper resort to rule 22 would have violated due process.

However, the second alleged due process violation is premised upon a clear violation of rule 22, which requires that we decide whether the procedural mandates of rule 22 are assimilated into the constitutional requisites of due process. Rule 22 required that Ms. Maldonado be afforded a post-transfer hearing within seven working days of her transfer. In fact, the hearing was held nine working days after her transfer, which as explained in Part I, *supra*, meant not only a two-day violation of rule 22 but also a four-day extension of Ms. Maldonado's confinement in Guyama.

■ The due process clause of the fourteenth amendment does not by itself endow a prisoner with a protected liberty interest in the security grade or location of her confinement. *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49

L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976). Protected due process liberty interests can be created, however, when a state "plac[es] substantive limitations on official discretion," *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). In the prison context, a state regulation creates a protected due process liberty interest when it "use[s] language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed, and that administrative segregation will not occur absent specified substantive predicates—viz., 'the need for control,' or 'the threat of a serious disturbance.'" *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Parenti v. Ponte*, 727 F.2d 21, 24 (1st Cir.1984).

■ Rule 22 clearly satisfies the criteria outlined in *Hewitt*. The rule uses unmistakably mandatory language, insisting that a temporary isolation or transfer *"will never last for more than the time required"* to resolve the emergency and that "[a]n Administrative hearing *will* be held ... within seven working days immediately thereafter...." (emphasis added). It also specifies seven substantive predicates, at least one of which must be satisfied before a rule 22 transfer may be ordered—e.g., alcohol or narcotic abuse, riot or insurrection, threats to the safety of witnesses, and the like. Rule 22 is very similar to the regulations found to have created due process liberty interests in *Hewitt*, 459 U.S. at 470 n. 6, 103 S.Ct. at 871 n. 6, and in *Parenti*, 727 F.2d at 24–25. It is also similar to Puerto Rico's Correctional Administration regulations governing the recommitment of halfway house residents to prison, which were found to have created a due process liberty interest in *Garcia v. DeBatista*, 642 F.2d 11, 14–16 (1st Cir.1981). We therefore hold that the rule 22 procedures governing emergency segregation and transfer in Puerto Rico prisons create a liberty interest protected by the due process clause of the fourteenth amendment.

---

**5.** *See* appellant's brief at 9–12.

In reaching this decision, we have not overlooked the Supreme Court's recent circumscription of the kinds of liberty infringements deemed cognizable as due process deprivations, *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (no due process deprivation inheres in petitioner's suffering attack by fellow prison inmate after prison authorities negligently ignored petitioner's warning about impending attack); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (no due process deprivation inheres in prisoner's suffering stairway fall after prison guard negligently left pillow on stairs). Despite their broad language, we do not regard *Davidson* and *Daniels* as controlling here. These cases addressed a different species of alleged due process deprivations than that of the complaint under review here.

In both *Davidson* and *Daniels*, prisoners suffered injuries at the hands of negligent prison authorities who were insulated from ordinary tort liability by state law. The non-existence of state procedures under which the prisoners could seek redress accounted for their claims of liberty deprivations without due process of law. The Supreme Court declined to find cognizable due process deprivations in these cases, holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property," *Daniels*, 106 S.Ct. at 663 (emphasis in original). The primary rationale for these decisions was the Court's concern to avoid " 'mak[ing] of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,' " *id.*, 106 S.Ct. at 666 (*quoting Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

The instant appeal lies outside both the factual context and the policy concerns implicated in *Davidson* and *Daniels*. Here, the laws of Puerto Rico established procedures whereby prisoners subjected to a certain kind of intentional liberty restriction—administrative segregation or transfer—could obtain timely review of the alleged need for their restricted status. These facts render Ms. Maldonado's petition doubly distinguishable from the complaints reviewed in *Davidson* and *Daniels*. Her liberty restriction resulted not from mere negligence but from deliberate action, and the procedural failing lay not in the non-existence of process per se, but in the arbitrary withholding of established process that was her due entitlement at law. Far from making the fourteenth amendment into a broad font of tort law, Ms. Maldonado's appeal seeks vindication of the core concern of the due process clause, namely, process that is due. *Cf. Ely, J.* DEMOCRACY AND DISTRUST (1980) at 18–19 ("[T]here is simply no avoiding the fact that the word that follows 'due' is 'process' ... [T]he proper function of the Due Process Clause [is] that of guaranteeing fair procedures.").

■ To hold otherwise, i.e., to find no cognizable due process deprivation in the lateness of Ms. Maldonado's rule 22 hearing, would be to assume that the Supreme Court has *sub silentio* overruled a long line of precedent culminating in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which established the principle that the due process clause prohibits state prison officers from arbitrarily withholding state-created process rights. This would reflect neither a prudent reading of precedent nor a faithful reading of the Constitution. We therefore conclude that Ms. Maldonado's due process rights were violated by the lateness of her rule 22 hearing.

### B. Damages

The question remains as to whether Ms. Maldonado's due process claim is compensable in damages. In her first amended complaint, she requested damages both for mental distress suffered "during her stay at the Guyama regional jail" and for irreparable psychological damage caused by "the fear of losing her life during the time of her detention in Guyama." [6] Relying on the testimony of a psychiatric expert, the

---

**6.** Plaintiff-appellant's amended complaint, paragraphs 11, 12.

district court found that Ms. Maldonado suffers from a personality disorder triggered by her early teenage experiences, which "has nothing to do with her commitment, whether in Vega Alta or Guyama." The court therefore concluded, "[w]e cannot find from the medical evidence ... that this plaintiff is suffering from any condition related to her commitment at Guyama or Vega Alta, ... which would entitle her to damages under Section 42, U.S.Code 1983."

■ We believe, and the appellant apparently concedes, that this finding cannot be overturned under the clearly erroneous standard, Fed.R.Civ.P. 52(a). This does not, however, foreclose the damages inquiry. The district court's findings addressed Ms. Maldonado's allegation of permanent psychological injury but not her separate claim for temporary emotional distress. It is well established that damages are recoverable under 42 U.S.C. section 1983 for emotional distress caused by due process deprivations. *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986); *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); *King v. Higgins*, 702 F.2d 18, 22 (1st Cir.) *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983); *Rodriguez de Quinonez v. Perez*, 596 F.2d 486, 491 n. 5 (1st Cir.) *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Such damages will not be presumed, but they are easily proved by testimony "showing the nature and circumstances of the wrong and its effect on the plaintiff." *Carey*, 435 U.S. at 263–64, 98 S.Ct. at 1052. Even where no actual damages are proved, the successful section 1983 plaintiff is entitled to nominal damages for due process deprivations, *id.* at 266–67, 98 S.Ct. at 1054.[7]

■ In light of these principles, we find two errors in the district court's analysis of the damages issue. First, the court omitted to consider Ms. Maldonado's entitlement to damages for emotional distress caused by the due process violation. Because she would have spent four fewer days in Guyama if her rule 22 hearing had been held on time, any emotional distress suffered by virtue of her confinement in Guyama for those four days is compensable. *See King v. Higgins*, 702 F.2d 18 (1st Cir.1983) (affirming, *inter alia*, prisoner's emotional distress damages of $375 for fifteen days isolation attributable to constitutionally defective disciplinary hearing). Ms. Maldonado introduced evidence concerning the causes and effects of the emotional distress she suffered at Guyama, consistent with the section 1983 proof requirements for such damages claims, *Carey v. Piphus*, 435 U.S. at 263–64, 98 S.Ct. at 1052.

■ Second, even if the evidence was insufficient to sustain an emotional distress award, Ms. Maldonado's constitutional injury entitled her to recover nominal damages from any liable party. *Carey v. Piphus*, 435 U.S. at 266–67, 98 S.Ct. at 1054. The district court therefore erred in finding no injury that would entitle her to damages under section 1983.

## C. Liability

Having found that Ms. Maldonado proved a compensable constitutional deprivation, we must decide whether to remand on the issue of damages. Damages findings will be necessary only if at least one of the appellees can be held liable. We therefore consider the appellees' liability, which implicates questions of immunity, causation and culpability.

### 1. *Immunity*

■ Prison officials and officers are entitled to a qualified immunity from dam-

---

7. Punitive damages are also available under section 1983, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). In her second amended complaint, the appellant accused appellee Velazquez of malicious harassment and increased her total damages claim by $15,000. But no evidence appears to have been introduced at trial in support of this claim, nor has it been argued on appeal.

ages liability under section 1983. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir.1985). The qualified immunity shields the defendants from damages if they acted with the objective good faith belief that they were not violating the plaintiff's statutory or constitutional rights, as measured by the state of the law when the deprivation occurred:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ... If the law at that time was not clearly established, an official could not ... fairly be said to "know" that the law forbade conduct not previously identified as unlawful ... If the law was clearly established, the immunity defense should ordinarily fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *see also Fernandez v. Leonard*, 784 F.2d 1209, 1214 (1st Cir.1986). Although the immunity is ordinarily lost if the law was clearly established at the time of the deprivation, the immunity can be sustained "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard...." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739.

 Here, the relevant law was clearly established by August, 1983, when non-compliance with rule 22 deprived Ms. Maldonado of due process. In 1976 the Supreme Court made clear that protected liberty interests respecting prison transfers do not inhere in the due process clause, but may be created when state statutes or regulations impose conditions on the discretionary power to transfer. *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) ("[N]o Due Process Clause liberty interest of a duly

convicted prison inmate is infringed when he is transferred from one prison to another ... with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events."); *Meachum v. Fano*, 427 U.S. 215, 225–26, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976). Federal courts repeatedly applied this principle prior to August, 1983 in finding that state statutes or regulations had created due process liberty interests in the procedures respecting both intra- and inter-prison transfers. *See Parker v. Cook*, 642 F.2d 865, 875 (5th Cir. Unit B 1981); *Bills v. Henderson*, 631 F.2d 1287, 1290–94 (6th Cir.1980); *Lamb v. Hutto*, 467 F.Supp. 562, 566 (E.D.Va.1979); *United States ex rel. Hoss v. Cuyler*, 452 F.Supp. 256, 289–90 (E.D.Pa.1978); *Bono v. Saxbe*, 450 F.Supp. 934, 941 (E.D.Ill.1978), *remanded on other grounds*, 620 F.2d 609 (7th Cir.1980); *Wright v. Enomoto*, 462 F.Supp. 397, 402–03 (N.D.Cal.1976), *aff'd*, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978); *cf. Vitek v. Jones*, 445 U.S. 480, 489–90, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980) (finding state-created liberty interest in statutory limits upon transfers of prisoners to mental hospitals); *Garcia v. DeBatista*, 642 F.2d 11, 14–17 (1st Cir.1981) (finding liberty interest created by Puerto Rico Correctional Administration regulations governing the recommittment of half-way house residents to prison); *Mitchell v. Hicks*, 614 F.2d 1016, 1019–20 (5th Cir. 1980) (reversing district court's dismissal of complaint alleging, *inter alia*, that Florida prison regulations created liberty interest in procedures governing assignment of prisoners to "close management" status); *Raso v. Moran*, 551 F.Supp. 294, 297 (D.R. I.1982) (finding state-created liberty interest in regulations permitting prisoners to donate blood in exchange for reductions of sentences). Thus, when the Supreme Court stated in February, 1983 that a prison regulation using "mandatory language in connection with ... specific substantive predicates ... create[s] a protected liberty interest," *Hewitt v. Helms*, 459 U.S. 460,

462, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), it reaffirmed a case line of at least seven years' duration.

It follows from the foregoing that none of the appellees can claim immunity from damages, unless one or more could show extraordinary circumstances supporting a finding that he neither knew nor should have known of the relevant legal standard. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739. We are not in a position to address this matter, and we shall leave it for the district court's consideration on remand.

### 2. *Causation and culpability*

 Section 1983 imposes a causation requirement similar to that of ordinary tort law. *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961); *Leite v. City of Providence,* 463 F.Supp. 585, 589 (D.R.I.1978) ("The broad language of section 1983 ... provides for liability for any person 'causing' a constitutional deprivation...."). Causation under section 1983 may be found both where a defendant's "action ... deprives a plaintiff of a constitutional right and [where a defendant] fail[s] to act, when there is a duty to act, to prevent such a deprivation," *Clark v. Taylor,* 710 F.2d 4, 9 (1st Cir.1983). With respect to prison officials, however, liability is not imposed for deprivations of federal rights caused by merely negligent acts or omissions:

> [A] prison official ... cannot be liable under section 1983 for merely negligent failure to act. He can, however, be liable for a failure to act that reflects a reck-

less or callous indifference to the rights ... of the prisoners in his charge.

*Clark v. Taylor,* 710 F.2d at 9; *see also Gero v. Henault,* 740 F.2d 78, 85 (1st Cir. 1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985); *Miller v. Solem,* 728 F.2d 1020, 1024 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); *Bannister v. Ponte,* 609 F.Supp. 920, 923, 924 (D.Mass.1985).[8]

 No findings were made below about who caused the plaintiff-appellant's due process deprivation, and the record on appeal permits no conclusive inferences to be drawn. Perhaps, as the record suggests, the lateness of the hearing was attributable to the Correctional Administration's having employed only one hearing examiner at the time. In that case, the Correctional Administrator, Mr. Callazo, may be at fault for not staffing his department sufficiently. On the other hand, it is possible that the hearing examiner received insufficiently prompt notification to schedule a timely hearing.[9] If this were the case, then the official or officials responsible for notifying the hearing examiner might be at fault. Alternatively, as the district court suggested, it may be that the regular superintendent at Vega Alta, Alice V. Vasquez, failed to make herself available for a timely hearing. In that case, assuming her testimony was essential for the rule 22 hearing, none of the named defendants would be at fault in this suit, and the appellant would be entitled to no relief.

---

8. The callous indifference requirement of *Clark v. Taylor,* 710 F.2d at 9, should not be confused with the culpability requirement discussed in *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The latter cases discussed the requirements for finding actionable due process deprivations where no deprivation of pre-existing state process rights was alleged. In that context, the Supreme Court concluded, more than mere negligence must be proved to establish a cognizable due process deprivation. Here, by contrast, a cognizable due process deprivation has already been proved; the question is whether the named defendants caused the deprivation, and if so, whether they were sufficiently

culpable to be held liable under section 1983. Under *Clark v. Taylor, supra,* they were sufficiently culpable only if they manifested callous indifference to the plaintiff-appellant's federal rights.

9. In an apparent typographical error, the summary of evidence describes the hearing examiner's testimony on the issue of notification as follows: the superintendent (of Vega Alta, presumably) sent notification that arrived at the Correctional Administration on July 28, 1983, but the examiner received it "the first week of July, 1983." Appellant's appendix at 22. Most likely, the hearing examiner received notification during the first week of August, 1983.

The dearth of evidence and findings with respect to causation also precludes any assessments of the appellees' culpability. For instance, even if the Correctional Administrator were at fault for employing only one hearing examiner, liability would not result unless his error reflected callous indifference to the post-transfer hearing rights of prisoners. Such culpability might be shown, for example, by evidence that the Correctional Administrator knew of the staff shortage and failed to act upon it, or that he willfully failed to monitor compliance with the hearing requirements of rule 22.

For purposes of our disposition of this appeal, however, the relevant fact is that we cannot rule out the possibility that one or more of the defendants-appellees caused the appellant's due process deprivation with callous indifference to her federal rights. We therefore must remand the case for further fact-finding on the questions of causation and culpability. *Cf. Cortes Quinones v. Jimenez Nettleship*, 773 F.2d 10, 14 (1st Cir.1985).

### D. Bias

■■■ The appellant alleges prejudice on the part of the district judge, which was expressed when the court admonished her attorney not to laugh during Mr. Velazquez's testimony. Conceding that her attorney laughed at that point, the appellant maintains that the court delivered the following improper admonition: "counsel, I do not like that, and remember in bringing a judgment, I will take that in consideration against your client."[10] If the court's admonition was phrased in this way, it would present at last a colorable claim of bias. *Cf. United States v. Kelley*, 712 F.2d 884, 890 (1st Cir.1983) ("There may ... be instances when a judge's attitude toward a particular attorney is so 'virulent' that the judge's impartiality concerning the attorney's client might reasonably be questioned."). But with neither a partial transcript documenting this exchange nor even a passing reference to it in the summary of evidence, the appellant's allegation lacks the substantiation necessary for this court to make any findings as to bias.

■■■ However, the lack of sufficient documentation does not entirely foreclose our consideration of the issue. Absent proof of personal bias requiring recusation, the appellate courts will nevertheless order reassignment of a case upon remand where necessary to preserve the appearance of fairness. *United States v. Navarro-Flores*, 628 F.2d 1178, 1185 (9th Cir.1980); *see also Mawson v. United States*, 463 F.2d 29, 31 (1st Cir.1972). A three-stage inquiry is used to determine whether such reassignment is advisable:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977); *see also United States v. Ferguson*, 624 F.2d 81, 83–84 (9th Cir.1980); *cf. O'Shea v. United States*, 491 F.2d 774, 778–79 (1st Cir.1974); *overruled as to a different holding, Wingo v. Wedding*, 418 U.S. 461, 473 n. 19, 94 S.Ct. 2842, 2849 n. 19, 41 L.Ed.2d 879 (1974) (employing a two-part balancing inquiry, with the second *Robin* factor subsumed into the first one).

■■■ As to the first factor, the difficulty of laying aside views determined to be erroneous depends, *inter alia*, upon the firmness with which those views were expressed. *Robin, supra*, 553 F.2d at 10; *see also Ferguson, supra*, 624 F.2d at 83. Here, such firmness is evident in the trial court's repeated rulings that the lateness of Ms. Maldonado's hearing was of "no consequence" and that Ms. Maldonado suffered no compensable damages. These expressed views also implicate the second

---

**10.** Appellant's brief at 18.

factor, i.e., preserving the appearance of fairness on remand. Even where, as here, the actual fairness of the trial judge is not in question, the parties "may be apprehensive of the obstacles in the way of its accomplishment, [and i]n these cases we have indicated a strong preference for a new fact finder." *O'Shea, supra,* 491 F.2d at 779. Finally, we find that reassignment would not "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Robin, supra,* 553 F.2d at 10. The proceedings on remand will not repeat the factual inquiries undertaken in the previous trial, and the questions remaining are confined to some relatively narrow issues of liability and, if liability is found, damages. Since the District of Puerto Rico has seven active district judges, this case does not present "the practical problem posed in obtaining another judge to sit upon retrial ... in a one or two judge district ...," *Robin, supra,* 553 F.2d at 11; *see also O'Shea, supra,* 491 F.2d at 779 n. 6.

We therefore conclude that reassignment upon remand is called for, but we emphasize that this should not be viewed as reflecting in any way upon the fairness of the judge who presided over the first trial.

### III. CONCLUSION

We affirm the district court's holding that the appellant's initial transfer to Guyama satisfied the requirements of rule 22 and hence did not violate her due process rights. But we have found that the lateness of the appellant's post-transfer hearing deprived her of due process, and that as a direct result thereof she spent four extra days in the Guyama prison. We therefore reverse the district court's ruling with respect to the post-transfer hearing issue and remand for further findings as to liability and damages consistent with this opinion. We also order that the case be reassigned to a different judge upon remand.

It is so ordered.