Robert CAREW

v.

Reginald **CENTRACCHIO,** individually and in his capacity as the Adjutant General of the State of Rhode Island, and the State of Rhode Island.

No. C.A. 97–148ML.

United States District Court, D. Rhode Island.

March 4, 1998.

Edward C. Roy, Providence, RI, for Plaintiff.

Neil F.X. Kelly, Special Assistant Attorney General, Providence, RI, for Defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court on defendant's motion for summary judgment. Defendant asserts that he is entitled to judgment as a matter of law on the grounds that his actions were legally permissible under the doctrine of qualified immunity. Plaintiff counters that defendant violated clearly established law when he terminated plaintiff's employment as a security specialist in derogation of plaintiff's rights to procedural and substantive due process.

1. See R.I. GEN. LAWS § 12–10–12.

## I. Background

The pertinent facts are not in dispute. Plaintiff was hired as a security specialist in the Rhode Island Air National Guard (RIANG) in April 1990. Plaintiff was required to carry a firearm in connection with his duties as a security specialist. Beginning in 1992, defendant issued plaintiff a handgun as part of his equipment for his use exclusively while employed as a security specialist.

In August 1994, plaintiff was charged with assault with a deadly weapon, a felony under Rhode Island law. On January 16, 1997, that charge was reduced to simple assault, a misdemeanor, and "filed" [1] for one year on plaintiff's not guilty plea. As part of its disposition, the Rhode Island Superior Court continued in effect a "no contact" order previously entered in that case. The parties agree that the "filing" of the misdemeanor charge does not constitute a conviction for purposes of application of 18 U.S.C. § 922. Defendant argues that the continuation of the "no contact" order subjects plaintiff to the provisions of 18 U.S.C. § 922(g)(8). Plaintiff counters that because the RIANG is a "department or agency" of the State of Rhode Island, the proscriptions of 18 U.S.C. § 922(g)(8) do not apply. *See* 18 U.S.C. § 925(a)(1).

On August 24, 1996, defendant was charged with "Domestic Simple Assault" in violation of R.I. GEN. LAWS §§ 11–5–3 and 12–29–5. On October 9, 1996, plaintiff entered a plea of *nolo contendere* to this misdemeanor charge. He was sentenced to one year probation. The defendant was ordered to have "no contact with Suzanne Lincoln" as a condition of his probation. Plaintiff admits that he and Ms. Lincoln had a child in common prior to his being charged with domestic assault. Plaintiff contends that the disposition of the domestic assault charge does not constitute a conviction under Rhode Island law. The defendant does not concede this point, however, neither party addresses this issue in any detail. Instead, both parties skip past the question as to whether plaintiff's continued employment would have been precluded by operation of the "Lautenberg Amendment". Pub.L. No. 104–208, § 658

(codified at 18 U.S.C. § 922(g)(9)). This court, having conducted its own research on this point is of the opinion that plaintiff's legal conclusion is incorrect and that his October 9, 1996 conviction for domestic simple assault triggered the provisions of the then newly enacted Lautenberg Amendment. This issue is more fully addressed below at II.

On or about October 21, 1996, the parties entered into a written agreement which purported to resolve the dispute between them as to plaintiff's employment status vis a vis the pending criminal charges. One of the provisions of that agreement provides:

> 2. In the event that Carew is either convicted or enters a plea of *Nolo Contendere* to any criminal charge then Carew shall submit his resignation to the State of Rhode Island.

It is unclear from the record, and the parties disagree as to whether this provision was to apply prospectively (i.e., only to the felony charge which was then pending) or whether it also applied to the misdemeanor domestic assault charge that plaintiff entered his *nolo* plea in on October 9, 1996. In light of the discussion which follows, I need not resolve this issue, nor does this factual dispute prevent disposition of this case pursuant to Rule 56.

On January 22, 1997, plaintiff was notified by letter that the disposition of both of plaintiff's criminal cases "rendered [him] non-qualified for continued employment as a State Security Officer...." The letter specifically referenced 18 U.S.C. § 922, presumably subsection (g)(8) ("prohibits persons subject to restraining orders from possessing firearms and ammunition"). Plaintiff was also advised that he violated the terms of the October 21, 1996 "agreement" by pleading *nolo* in the domestic simple assault case. Finally, plaintiff was informed that defendant was considering terminating his employment and that a hearing was scheduled for January 28, 1997.

On January 28, 1997, plaintiff attended the hearing with his present counsel. On February 20, 1997, defendant advised plaintiff by letter that his employment with RIANG was terminated effective February 28, 1997. The letter advised plaintiff that the basis for his termination was that the Superior Court and District Court dispositions "rendered [him] non-qualified for continued employment" again citing, presumably, the provisions of 18 U.S.C. § 922(g)(8).

## II. Discussion

### A. The Summary Judgment Standard

The applicable law with respect to summary judgment is well-settled. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir.), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

In the matter at hand, defendant contends that he is entitled to summary judgment as a matter of law on the basis of qualified immunity. The doctrine of qualified immunity shields government officials from civil liability damages "if they acted with the objective good faith belief that they were not violating the plaintiff's statutory or constitutional rights, as measured by the state of law when the deprivation occurred." *Maldonado Santiago v.. Velazquez Garcia*, 821 F.2d 822, 830 (1st Cir.1987); *see also Vargas–Badillo v. Diaz–Torres*, 114 F.3d 3, 5 (1st Cir.1997).

Government officials performing discretionary functions are generally entitled to qualified immunity from damages liability under § 1983. *See Gomez v. Toledo*, 446 U.S. 635, 639, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Maldonado*, 821 F.2d at 829–30. Such officials have qualified immunity if they can prove either of the following: "the federal law allegedly violated was not clearly established at the time of the alleged violation, or ... at summary judgment, there is no genuine dispute of material fact that would prevent a finding that the defendants' actions, with regard to applying or following such clearly established law, were objectively

reasonable." *Vargas–Badillo,* 114 F.3d at 5; *see also Tatro v. Kervin,* 41 F.3d 9, 15 (1st Cir.1994) ("Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings...."). While employment decisions may not appear initially to be the type of critical actions which merit qualified immunity, a government official's broad discretion in such matters is often "essential to the effective implementation of important government policies." *de Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986).

### B. The Lautenberg Amendment

On September 30, 1996, only days before plaintiff entered his *nolo* plea to the misdemeanor charge of domestic assault, the "Lautenberg Amendment" to the Gun Control Act of 1968 became law. The "Amendment" added section (g)(9) to 18 U.S.C. § 922, and specifically excepted it from the exemption for State agencies in § 925(a)(1). Section 922(g)(9) provides that "it shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess ... any firearm or ammunition...."

While plaintiff acknowledges that he entered a plea of *nolo contendere* to the charge of domestic assault,[2] he argues that the disposition on that charge is not a conviction under state law, and that therefore, he is not subject to the provisions of § 922(g)(9). In support of this contention, he relies on RIGL § 12–18–3. That statute "provides for a special circumstance in which a *nolo contendere* plea and *successful completion of probation* will not constitute a conviction ...." *U.S. v. Lindia,* 82 F.3d 1154, 1163 (1st Cir.1996) (emphasis added). The logical corollary to this provision is that "Rhode Island treats *nolo contendere* pleas as convictions *unless*

the defendant meets the provisions of § 12–18–3," *Id.* at 1163 n. 8, i.e., that the defendant has successfully completed his term of probation.

■ On the date that defendant discharged plaintiff, plaintiff had not yet successfully completed his term of one year probation which had been imposed on October 9, 1996. He was therefore subject to the provisions of 18 U.S.C. § 922(g)(9). Defendant's letter of January 22, 1997, and the discharge letter dated February 20, 1997, both advised plaintiff that his termination was premised on plaintiff's having been rendered "non-qualified" by virtue of federal law which prohibited him from possessing firearms and ammunition. Although defendant (and plaintiff for that matter) seemed to be focusing their attention on the provisions of § 922(g)(8), defendant's ultimate conclusion (that federal law prohibited plaintiff from possessing firearms and ammunition, thereby rendering him "non-qualified for continued employment as a State Security Officer") was correct.

This court therefore finds that defendant is entitled to judgment as a matter of law as to plaintiff's claims of procedural and substantive due process in that plaintiff was afforded notice and a hearing and that his termination was for cause.

■ Plaintiff has also advanced a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment. In essence, plaintiff claims that he was treated differently from other Security Specialists employed by the RIANG on account of his race. In support of his motion for summary judgment, defendant has presented the affidavits of Robert Germani, Jr., the RIANG Chief of Security, and Susan Jay, Fiscal Management Officer of the RIANG. The affidavits attest

---

**2.** The criminal complaint charged plaintiff with violating R.I. Gᴇɴ. Lᴀᴡs §§ 11–5–3 (Simple assault) and 12–29–5 (Disposition of domestic violence cases). R.I. Gᴇɴ. Lᴀᴡs§ 12–29–2 defines "domestic violence" as the commission of simple assault (as well as other crimes) by one family or household member against another. R.I. Gᴇɴ. Lᴀᴡs § 12–29–2(b) defines a "family or household member" as, inter alia, "persons who have a child in common regardless of whether they

have been married or have lived together...." The federal analog (18 U.S.C. § 921(a)(33)(A)) defines the term "misdemeanor crime of domestic violence" as "an offense that ·
  (i) is a misdemeanor under Federal or State law; and
  (ii) has, as an element, the use or attempted use of physical force ... by a person with whom the victim shares a child in common...."

to the fact that no other Security Specialist had been convicted of a criminal offense that would render him/her ineligible to carry a weapon. Plaintiff has not offered any affidavit, deposition or pleading in response, nor has he addressed his Equal Protection claim in his opposition to defendant's motion. I therefore accept the statements of the affiants as uncontroverted, D.R.I. Loc. R. 12.1(d), and find that defendant is entitled to judgment on this claim as well.

### III.  Conclusion

While the parties in this case may have been sidetracked by an ancillary issue, a careful examination of the material undisputed facts and a proper application of the law mandate the granting of defendant's motion for summary judgment.

SO ORDERED: