Earle MCSORLEY, Plaintiff

v.

Tom RICHMOND and Town
of Carmel, Defendant

and

Glennis MCSORLEY, Party–in–Interest

No. Civ.02–97–B–S.

United States District Court,
D. Maine.

Dec. 31, 2002.

Arthur J. Greif, Julie D. Farr, Gilbert &
Greif, P.A., Bangor, ME, for Plaintiff.

Anne M. Carney, Norman, Hanson &
Detroy, Portland, ME, for Defendants.

*ORDER ACCEPTING THE RECOM-
MENDED DECISION OF THE
MAGISTRATE JUDGE*

SINGAL, District Judge.

No objections having been filed to the Magistrate Judge's Recommended Decision filed December 5, 2002 the Recommended Decision is accepted.

Accordingly, it is *ORDERED* that Defendant Thomas Richmond's Motion for Summary Judgment on Count II and the Town of Carmel's Motion to Remand Count I are granted and Plaintiff's Motion for Partial Summary Judgment is DISMISSED WITHOUT PREJUDICE.

**RECOMMENDED DECISION ON DE-
FENDANTS' MOTION FOR SUM-
MARY JUDGMENT AND RE-
MAND**

KRAVCHUK, United States Magistrate Judge.

Plaintiff Earle McSorley sued Defendants Thomas Richmond and the Town of Carmel in Penobscot Superior Court on May 20, 2002 with a Complaint alleging two counts, a state law claim against the Town to quiet title in a certain parcel of land and a federal civil rights claim against Thomas Richmond, the Town's manager. Defendants removed the case to this Court on June 3, 2002 due to the existence of federal question jurisdiction. On August 15, 2002, Plaintiff moved for partial summary judgment on his quiet title claim. On October 17, 2002, Defendants moved for summary judgment against the federal claim and for remand of the quiet title claim. I **RECOMMEND** that the Court **DISMISS** Plaintiff's Motion without prejudice, **GRANT** Defendant Thomas Richmond's Motion on Count II, and Defendant Town of Carmel's Motion to remand Count I to the state court.

**Summary Judgment Material Facts**

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The following facts are drawn from the parties' Local Rule 56 statements of material facts, found in the court's record at docket numbers 9, 15, 18, 27 and 29.[1]

Plaintiff Earle McSorley and his wife, Party–in–Interest Glennis McSorley, reside together in the Town of Carmel on a piece of property situated along the Horseback Road ("the subject parcel"). According to Mr. McSorley, he and Glennis McSorley are "joint owners" of the subject parcel. *Docket No. 29,* ¶ 2. In September 1993, the Town closed a section of the Horseback Road because a gravel pit operation Mr. McSorley conducted on the property had undermined the road's foundation, jeopardizing the safety of the traveling public. The Town conducted litigation against Mr. McSorley for causing the dangerous condition and obtained relief in an order issued by the Penobscot County Superior Court on October 25, 1994. The order mandated that Mr. McSorley refill and regrade his gravel pit

---

**1.** For counsels' benefit the following docket numbers correspond to the following summary judgment filings:

    Docket No. 9–Plaintiff's Statement of Material Facts;

    Docket No. 15–Defendants' Opposing Statement of Material Facts;

    Docket No. 18–Plaintiff's Reply Statement of Material Facts;

    Docket No. 27–Defendants' Statement of Undisputed Material Facts;

    Docket No. 29–Plaintiff's Response to Defendants' Statement of Material Facts and Statement of Additional Material Facts.

by August 31, 1995 and called for sanctions of $50.00 per day in the event of noncompliance. Mr. McSorley failed to comply and was found in contempt of court on August 31, 1999 by the Superior Court. The contempt order imposed sanctions of $2,600.00, and $50.00 per day until the pit should be refilled. The Town also obtained a renewal writ of execution, which amounted to $41,050.00 as of October 16, 2001. *Docket No. 15*, ¶¶ 5, 7–10.

Sometime in the course of the ensuing year, the Town decided to levy on its writ of execution by means of a sheriff's sale. To this end, the Town's municipal counsel, Bernstein Shur Sawyer & Nelson, prepared a Notice of Sale and directed the Penobscot County Sheriff's Department to post the Notice in the Town of Carmel and in two adjacent towns as well. *See* 14 M.R.S.A. § 2202. Municipal counsel further arranged for publication of the Notice in the Bangor Daily News for three consecutive weeks, with the first publication occurring 30 days or more prior to the sale. *See id.* On September 26, 2001, municipal counsel delivered a copy of the Notice to Glennis McSorley at her residence. Municipal counsel did not, however, deliver a copy of the Notice to Earle McSorley. *Docket No. 15*, ¶¶ 13–5, 17; *Docket No. 9*, ¶¶ 3–4.

Rather than delivering a copy of the Notice to Mr. McSorley, municipal counsel sent a copy of the Notice to Mr. McSorley's counsel with cover stating that "you are being sent a copy of this notice of sheriff's sale as counsel to the judgment debtor in a civil action brought by the Town of Carmel against Earle McSorley." *Docket No. 18*, ¶ 23. Personnel at the office of Mr. McSorley's counsel signed for the certified letter on September 26, 2001, more than 30 days prior to the sale. Municipal counsel apparently sent the Notice to Mr. McSorley's counsel because Mr. McSorley's counsel had previously instructed municipal counsel not to serve any documents directly upon Mr. McSorley, but to "simply direct them to my attention with an acceptance of service on his behalf which I would then sign." *Docket No. 18*, ¶ 19. Municipal counsel did not include with the Notice an acceptance of service form for Mr. McSorley's counsel to sign. At his subsequent deposition, Mr. McSorley testified under oath that he never "received" notice of the sale from his counsel or any other source. *Docket No. 15*, ¶ 23; *Docket No. 29*, ¶ 10.[2]

2. I am willing to assume this fact for purposes of summary judgment, although I note that Mr. McSorley's deposition testimony is anything but clear on this point. *Deposition of Earle McSorley* at 41–44 (indicating, among other things, that he had "heard rumors about [the sale]"). The deposition transcript is appended to Defendants' Statement of Undisputed Material Facts, Docket No. 27.

I am also concerned by the following statement by Mr. McSorley's counsel, which seems to demand an inference that Mr. McSorley heard more than rumors from his own wife: "At no point between the receipt of [the Notice] and the actual sheriff's sale ... did I have *any* discussions with Earle McSorley. Nor did I ever mail the sheriff's sale notice and enclosure letter to Mr. McSorley.... I assumed that Mr. McSorley would be personally served or have service left at his usual place of abode, as required by 14 M.R.S.A. § 2202.... At some point ... I became aware, through a conversation with Glennis McSorley, that Earle McSorley had never been personally served, nor served at his usual place of abode." *Declaration of Arthur J. Greif, Docket No. 31,* at 2. One has to question how Glennis McSorley knew that Mr. McSorley had not received notice. Finally, the record does establish that the Notice was given to Glennis McSorley at the McSorley residence. It is hard to imagine how this did not also amount to "leaving [written notice] at [Mr. McSorley's] last and usual place of abode." 14 M.R.S.A. § 2202. Nothing in the statute suggests that a single notice cannot provide notice to more than one person. The Notice can be found at Exhibit 8 to the Affidavits of Wendy Paradis, Esq. and Thomas Richmond, Docket No. 14.

On October 25, 2001, five days before the scheduled date of the sale, Mr. McSorley's counsel mailed a letter to the Town's counsel and to the Penobscot County Sheriff in which he objected to the sale based on the fact that "procedural requisites for a sheriff's sale have not been met." *Docket No. 18*, ¶ 24 (*see also* 14 M.R.S.A. § 2202). Municipal counsel received the objection, but rather than jettisoning the pending sale and starting over, the sale proceeded as scheduled. On October 30, 2001, Deputy Sheriff Alan Cole conducted the sale and conveyed the property to the Town by sheriff's deed. *Docket No. 18*, ¶¶ 24, 25.

With respect to Defendant Thomas Richmond's conduct, Plaintiff McSorley offers only this: that it was Thomas Richmond who placed the Town's bid at the sheriff's sale.[3] *Docket No. 29*, ¶ 20.

### Discussion

Title 42 U.S.C. § 1983 confers upon every United States citizen a right to redress against any person who, acting under color of state law, causes a deprivation of his or her "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Earle McSorley contends that Thomas Richmond violated his Fourteenth Amendment rights to substantive and procedural due process by failing to "serve" him with notice of the sheriff's sale, by permitting the sale to go forward despite the lack of service, and by bidding on behalf of the Town without first obtaining express authorization from the Town.

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Remand, Docket No. 28*, at 2, 5. The § 1983 claim is advanced solely against Defendant Thomas Richmond. The Town is not named as a defendant in this claim. *See Complaint, Count II.*

There are at least two reasons why the facts relating to Mr. Richmond's authority to bid cannot support a § 1983 claim premised on due process. Most fundamentally, whatever may or may not have transpired between the Town and Mr. Richmond in relation to Mr. Richmond's authorization to participate in the sheriff's sale, it was something that was preliminary to the sale and did not itself work a deprivation of Mr. McSorley's property rights. Secondly, and almost as fundamentally, Mr. McSorley did not have a right to "process" in relation to the Town's internal deliberations on this administrative matter. He possessed no right to receive notice or to be heard concerning whether or not the Town would levy its execution by means of the sheriff's sale. Consequently, the only colorable issues raised by Mr. McSorley are whether his failure to receive actual notice and Thomas Richmond's participation in the bidding can support a civil rights claim against Thomas Richmond.

Defendant Thomas Richmond bases his motion for summary judgment on the *Parratt-Hudson* doctrine and the doctrine of qualified immunity. However, it is not at all clear whether the *Parratt-Hudson* doctrine is applicable to the facts of this case[4]

---

3. Mr. McSorley also offers that the Town never publicly authorized Mr. Richmond to bid on the property during any prior town meeting and that the Town did not pay a deposit in order to be eligible to bid, a condition that was apparently imposed on other bidders. *Docket No. 29*, ¶¶ 18–20. Neither of these facts reveals conduct on the part of Thomas Richmond, as distinct from "the Town."

4. In *O'Neill v. Baker*, the First Circuit Court of Appeals suggested in *dicta* that a state actor's failure to follow procedures established by state law might amount to "random and unauthorized" conduct under the Parratt–Hudson doctrine. 210 F.3d 41, 47, 50 n. 6 (2000) (Selya, J., "disassociat[ing]" himself from this statement by Lynch, J., and Boudin, C.J.) (panel decision). However, the doctrine applies in only two relatively narrow circumstances, where there is "the necessity of quick

and a full-scale qualified immunity analysis is unnecessary, given that there are more fundamental obstacles to Mr. McSorley's § 1983 claim against Thomas Richmond: no causation.

■■■ When qualified immunity is raised in this Circuit, the analytical sequence of events is supposed to be (1) whether the allegations or facts make out a constitutional violation; if so, (2) whether the constitutional right at issue was clearly established; and, if so, (3) whether a reasonable office holder in the defendant's position would, under similar circumstances, recognize that his or her acts would work a constitutional deprivation. *Suboh v. District Attorney's Office*, 298 F.3d 81, 90 (1st Cir.2002). Of course, tied into the question of whether a constitutional violation occurred is the question of who caused the violation. This question could be addressed as an aspect of the third qualified immunity element, or as a more basic element of a proper § 1983 claim. Because a § 1983 claim is defendant-specific, a plaintiff must show how each defendant's own, personal conduct caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983 (creating liability for "[e]very person who . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges or immunities. . . ."); *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 831 (1st Cir.1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law."). On balance, it seems more appropriate to address the issue of causation outside of the qualified immunity context in order to avoid opining about whether some person not named as a defendant in this action might have subjected Mr. McSorley to a constitutional deprivation.

### 1. Thomas Richmond was not responsible for providing Plaintiff with notice.

Mr. McSorley does not contend that he was entitled to a hearing prior to the sheriff's sale. After all, the Town's right to levy on the writ by means of the sheriff's sale is conclusively established. The writ arose from a judicial proceeding in the Superior Court and there is no suggestion that that proceeding did not comply with due process. Instead, the gravamen of Mr. McSorley's claim is that he did not receive adequate notice of the sale. The provision of adequate notice is inherently a procedural due process concern. To be adequate for purposes of the Fourteenth Amendment, "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■■ Title 14 M.R.S.A. § 2202 reflects the Maine Legislature's prescription for providing notice to parties interested in a

---

action by the State" or where the provision of meaningful predeprivation process is otherwise impractical. *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The facts of this case do not give rise to any exigency, nor would pre-deprivation process be impractical considering that pre-deprivation process was called for by state law. Thus, the point of departure for *Parratt-Hudson* appears to be whether a meaningful pre-deprivation procedure could be followed rather than whether an existing pre-deprivation procedure was followed. If compliance with the due process clause requires that pre-deprivation procedures be provided, the availability of post-deprivation remedies is irrelevant. Thus, in *Zinermon v. Burch*, the Supreme Court recognized a procedural due process claim where pre-deprivation procedures were appropriate and available, but were not provided, even though meaningful post-deprivation remedies may have existed. 494 U.S. 113, 138–39, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

sheriff's sale or "levy by sale." Although non-compliance with this state statute does not necessarily mean that the United States Constitution has been violated, Mr. McSorley contends that the facts of his case reflect violations of both the statutory and constitutional standards. Ultimately, this Court need not determine whether either standard has been breached. The levy by sale statute clearly places the duty of providing notice on the sheriff, not on the party holding the writ of execution. Furthermore, Mr. McSorley admits that it was the Penobscot County Sheriff's Office and the Town's municipal counsel who undertook to provide Mr. McSorley with notice, not Thomas Richmond. *Docket No. 15*, ¶ 14; *Docket No. 18*, ¶ 14. Mr. McSorley has not presented any other facts reflecting conduct on the part of Thomas Richmond that contributed to the non-provision of actual notice. In sum, Thomas Richmond cannot be held liable for depriving Mr. McSorley of property without constitutionally adequate notice because Thomas Richmond was not responsible for and did not assume responsibility for providing notice.

## 2. Thomas Richmond's participation in the bidding process did not cause a deprivation of Plaintiff's due process rights.

■ This aspect of Mr. McSorley's § 1983 claim does not implicate substantive due process rights any more than the last. Mr. Richmond's mere participation in the bidding process did not amount to "conscience shocking" or "abusive" conduct. *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Nor did his participation transgress any of Mr. McSorley's "fundamental" rights and liberties. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). As for procedural due process, it is plain that Mr. McSorley was not entitled to notice or an opportunity to be heard in connection with whether or how much Thomas Richmond would bid. Mr. McSorley's only constitutional entitlement was to reasonable advance notice of the time and place of the sale and this was an entitlement that someone other than Thomas Richmond was obliged to provide.

## Conclusion

For the reasons stated herein, I **RECOMMEND** that the Court **GRANT** Defendant Thomas Richmond's Motion for Summary Judgment on Count II and the Town of Carmel's Motion to Remand Count I and **DISMISS** Plaintiff's Motion for Partial Summary Judgment **WITHOUT PREJUDICE**.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

December 5, 2002.