Arnold L. KING, Plaintiff,

v.

Joseph HIGGINS et al., Defendants.

Civ. A. No. 73-2227-T.

United States District Court, D. Massachusetts.

Jan. 30, 1974.

Roxbury Defenders Committee, Edward E. Berkin, Roxbury, Mass., for plaintiff.

Dennis LeCroix, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

This is a civil rights action (42 U.S.C. §§ 1983, 1985) for injunctive, declaratory and monetary relief in which plaintiff, an inmate in M.C.I. Concord at the time in question, alleges deprivation of his rights to due process of law and effective assistance of counsel. Defendants are the then acting Commissioner of Corrections and Superintendent of M.C.I. Concord.

Pursuant to an Order of Reference, the matter was heard by the magistrate, who made findings of fact and recommended dismissal of the complaint. For the reasons outlined below, the court is unable to approve the magistrate's recommendation.

All parties have stipulated that "the case should be considered fully submitted and therefore ripe for a decision on the merits."

The magistrate made the following findings of fact, which stand uncontested by the parties.

Plaintiff is twenty years old. Following a judgment of conviction for murder in the first degree, he was sentenced on June 21, 1972 to M.C.I. Walpole to serve a life sentence. Plaintiff is not eligible for parole. He remained at Walpole until December 21, 1972 when he was transferred to M.C.I. Concord.

Prior to the incident giving rise to this complaint, disciplinary action was taken against plaintiff on several occasions at both Walpole and Concord, all on the basis of alleged disobedience.

At Concord, plaintiff was active in several rehabilitative projects, such as the tutor and teaching aid programs. He worked in the library where he was given a great deal of responsibility, and was a member and treasurer of the Inmate council.

On June 14, 1973 plaintiff was transferred to the Farm Section of M.C.I. Concord, in which the inmates are housed in a dormitory-like facility some distance from the main institution. On July 2, 1973 plaintiff was late reporting to work on the Farm, and a dispute developed between plaintiff and the officer in charge of the work detail. The officer in his report claimed that plaintiff walked off the field without permission and refused to return to work, and that he spoke to other inmates who also walked off the field. Plaintiff asserts that he merely sought a drink of water.

Plaintiff and the other inmates were immediately taken to the main institution and confined in "Awaiting Action" cells. Plaintiff remained in the cell from 11:45 a. m. to 4:30 p. m. when he was taken before a disciplinary board consisting of two deputy superintendents and a social worker. A hearing was held in which plaintiff was charged with refusing to work, refusing a direct order, and inciting a riot. The report of the officer was read to plaintiff, and the board asked for his version of the incident. Plaintiff denied the charges and claimed that all he wanted was a drink of water. After a discussion, the board decided that plaintiff was lying, and ordered him to serve fifteen days in isolation.

No member of this board advised plaintiff that he could seek the advice of counsel, confront the complaining officer, or present witnesses in his own behalf. Plaintiff made no requests to do so.

Following the hearing plaintiff was advised of his right to appeal and was provided with an appeal form which he

completed. The form was forwarded to the Superintendent, who denied the appeal.

The other seven inmates involved appeared before the disciplinary board and were similarly ordered to isolation.

The following day Robert Sarafian, Director of Treatment at Concord, was asked to hold a reclassification hearing on plaintiff and four other inmates. Chosen to sit on the board with Sarafian were James Veves, Assistant Deputy Superintendent, Robert Craig and Jerard Gagnon, both Correction Officers, and one unidentified member. Sarafian was the only member of the board not aware of the farm incident of the previous day.

Plaintiff was not given written notice prior to the hearing. Nor was he advised one way or the other with respect to any right to counsel he might have. He was informed, however, of his right to present testimony and evidence in his own behalf. Plaintiff was also asked to comment on evidence which the reclassification board had before it.

After the hearing, the board decided to recommend that plaintiff be transferred to M.C.I. Walpole. He was advised of this recommendation and of his right to appeal to the Superintendent or the Commissioner of Corrections. Plaintiff did not exercise his right of appeal.

The reason given by the reclassification board for recommending the transfer was the fact that plaintiff had been involved in frequent disciplinary infractions. While not so specifying in their reclassification hearing report, the members of the board testified before the magistrate that it was their belief that plaintiff was not suitable for Concord because its programs are designed for inmates who are placed there for only a short time. The average inmate at Concord is serving an indeterminate sentence, and the average parole eligibility is from six to eighteen months. As pointed out above, plaintiff is not eligible for parole. Of the 401 inmates at Concord, ten or eleven are serving life sentences, two or three for first degree murder. All of the other inmates serving life sentences have been incarcerated at other institutions and have served many years prior to being transferred to Concord.

The transfer of plaintiff was approved by the Commissioner on July 25, 1973 and he was removed to M.C.I. Walpole, where he is presently confined.

Plaintiff argues that the procedure of the disciplinary board, resulting in his isolation, and the procedure of the reclassification board, resulting in his transfer, were constitutionally deficient under the Due Process Clause of the Fourteenth Amendment. Plaintiff also contends that he was deprived of his Sixth Amendment right to counsel while confined in isolation.[1] For the reasons outlined below, the court agrees with his first contention.

■ It is now settled in this Circuit that some due process is required before an inmate can be sentenced to segregation. Palmigiano v. Baxter, 487 F.2d 1280 (1st Cir. 1973). *Palmigiano* was decided after the incident giving rise to plaintiff's complaint, and after the magistrate's recommendation. The Court of Appeals stated in its opinion that it would give only prospective enforcement to the "novel" requirements of use immunity and right to counsel[2]. The

---

1. This contention, the basis of plaintiff's original action, was not dealt with by the magistrate.

2. "We therefore conclude that appellant was denied due process in the disciplinary hearing only insofar as he was not provided with use immunity for statements he might have made within the disciplinary hearing, and because he was denied access to retained counsel within the hearing. Since, however, this solution is novel, the appellee cannot in fairness be subject to a sanction which would ordinarily accompany the violation of preexisting law, Jones v. Rundle, 358 F.Supp. 939, (E.D.Pa.1973); cf. Great Northern Railway Co. v. Sunburst Oil and Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). It follows that appellant's claim for money damages must be denied. However, appel-

standards violated in the instant case, however, are far from novel. On the contrary, plaintiff was deprived of rudimentary elements of fundamental fairness long recognized by the courts and, in fact, the Massachusetts correctional authorities.[3] It is unnecessary, therefore, to rely on *Palmigiano* in resolving the issues presented in the instant case.

> The conclusion in *Palmigiano* that: a minimal level of due process must be achieved in reaching any decision concerning a particular inmate which may result in a marked change in the status of the inmate's confinement, with the result that he may be deprived of amenities on which he has come to rely.

*Palmigiano*, 487 F.2d at 1284, was a reaffirmation of the position of the Court of Appeals in 1970, when it held that:

> [w]hile all the procedural safeguards provided citizens charged with a crime obviously cannot and need not be provided to prison inmates charged with violation of a prison disciplinary rule, some assurances of elemental fairness are essential when substantial individual interests are at stake.

Nolan v. Scafati, 430 F.2d 548, 550 (1st Cir. 1970).

The decision to order plaintiff from the minimal security of the prison farm [4] to segregation, with the attendant possibility of reclassification and fu-ture re-punishment,[5] is clearly one that markedly changed his status of confinement and constituted a grievous loss. Plaintiff was entitled, therefore, to due process safeguards. Many courts have so held prior to the recent decision in Palmigiano v. Baxter, *supra*. See McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973), cert. granted —— U.S. ——, 94 S.Ct. 913, 39 L.Ed.2d 108 (1974); Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971), cert. denied sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740; Collins v. Hancock, 354 F.Supp. 1253 (D.N.H.1973); Sands v. Wainwright, 357 F.Supp. 1062 (M.D. Fla.1973); United States ex rel. Neal v. Wolfe, 346 F.Supp. 569 (E.D.Pa.1972); Meola v. Fitzpatrick, 322 F.Supp. 878 (D.Mass.1971); Urbano v. McCorkle, 334 F.Supp. 161 (D.N.J.1971), affm'd 3 Cir., 481 F.2d 1400; Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971); Sinclair v. Henderson, 331 F.Supp. 1123 (E.D.La. 1971); Clutchette v. Procunier, 328 F. Supp. 767 (N.D.Cal.1971); Bundy v. Cannon, 328 F.Supp. 165 (D.Md.1971). See also Order dated June 29, 1973 in Danese v. Moriarty, 73–504–T (D.Mass.), note 7, *infra*.

The issue becomes, therefore, not whether but how much plaintiff was entitled to by way of due process at his disciplinary hearing. This question has been answered by the Court of Appeals in its Palmigiano v. Baxter opinion.[6]

---

lant's in-prison record will be expunged of all findings and decisions pertaining to the alleged infraction and the disciplinary board hearing. We will apply this rule in the future only to those cases where a disciplinary hearing occurs subsequent to the date of this opinion." *Palmigiano*, 487 F.2d at 1292.

3. See discussion of departmental regulations below.

4. Douglas Vinzant, Superintendent of M.C.I. Concord at the time in question, described the farm as a type of work-release program. See Transcript of Hearing before Magistrate, I, 86–87.

5. See Gomes v. Travisono, 490 F.2d 1209, 1213 (1st Cir. 1973).

6. The *Morris* rules, [Morris v. Travisono, 310 F.Supp. 857 (D.R.I.1970)], adopted as a basic standard by the First Circuit in Palmigiano v. Baxter, require: 1. timely notice of the charges against the inmate; 2. an opportunity to appear at the disciplinary hearing with the assistance of an authorized counsel-substitute; 3. an impartial tribunal, none of whose members reported upon or witnessed the alleged infraction; 4. the right to call witnesses and cross-examine them; 5. the right to a decision based upon "substantial evidence"; 6. notice of the rationale and consequences of the decision; and 7. the opportunity to appeal the decision to the Superintendent.

The First Circuit has added three more constitutional requirements for disciplinary board hearings: 1. "use" immunity for statements the inmate might make at the disciplinary hearing and a requirement that the inmate be informed at the hearing of

■ But this court need not rely upon these recently enunciated requirements, because measured against even the most basic standards of due process and fundamental fairness, the disciplinary procedure afforded plaintiff fails to pass constitutional muster.

Plaintiff was not afforded timely notice of the charges against him. They were read to him only after the disciplinary hearing had begun. Advance written notice is a critical element in "rudimentary due process." Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sarzen v. Gaughan, 489 F.2d 1076, 1084 (1st Cir. 1973). For an exhaustive compilation of cases applying this concept to prison disciplinary procedures, see Sands v. Wainwright, 357 F.Supp. 1062, 1085–1086 (M.D.Fla.1973). See also Collins v. Hancock, 354 F.Supp. 1253 (D.N.H. 1973); Order dated June 29, 1973 in Danese v. Moriarty, 73–504–T (D.Mass.), note 7, *infra*.

It is no answer to the failure to provide notice prior to the hearing that "King knew why he had been placed in the 'Awaiting Action' cell." Magistrate's Memorandum, p. 6. It would be fundamentally unfair to presume that an inmate would "know" he would be charged with inciting a riot because he walked off a field. While the prisoner may be charged with knowledge of facts and circumstances of a .particular event, he cannot be charged with knowledge as to the legal interpretation or theory of action which prison authorities may seek to follow with respect to such event. The situation is analogous to that involving an individual who knows the circumstances which brought about his arrest, but is nonetheless entitled to notice as to the theory of action the government intends to pursue with respect to his case.

Plaintiff was not told that he had the right to call witnesses in his behalf, or to require the presence of the officer upon whose report the board solely relied. He was merely permitted to state his version of the alleged offenses set out in the written report. The opportunities to present evidence and to confront adverse witnesses are safeguards basic to even the most conservative view of fundamental fairness. See Goldberg v. Kelly, 397 U.S. 254, 267–270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). For an exhaustive compilation of cases applying this concept to prison disciplinary hearings, see Sands v. Wainwright, 357 F. Supp. 1062, 1086–1088 (M.D.Fla.1973). See also Collins v. Hancock, 354 F.Supp. 1253 (D.N.H.1973); Order dated June 29, 1973 in Danese v. Moriarty, 73–504–T (D.Mass.), note 7, *infra*.

These departures from traditional norms of fundamental fairness would in themselves require the granting of relief by this court. Beyond this, however, is the fact that the defendants failed to follow their own departmental regulations for the conduct of disciplinary hearings. See Commissioner's Bulletin 72–1. These rules, in effect since June 5, 1972, require that an inmate charged with a major infraction be given: written notice of the charges and a copy of the disciplinary report prior to the hearing; the opportunity to be represented by counsel or a law student; and the opportunity to have the complaining officer present and to question him. The failure to adhere to these general guidelines promulgated to insure "a speedy and fair adjudication of alleged wrongdoing", see Commissioner's Bulletin 72–1, itself constitutes a violation of due process of law. See United States v. Leahey, 434 F.2d 7 (1st Cir. 1970); Carter v. McGinnis, 320 F.Supp. 1092 (W.D.N.Y.1970).

this immunity and its consequences; 2. permission for the inmate to bring retained counsel with him to the disciplinary hearing if he so desires; 3. an admonition "that in instances where the identity of an adverse witness is withheld from an accused inmate, out of a legitimate fear that otherwise the witness would be subject to retributive violence, the board has a strong obligation to summon the adverse witness before it, in camera, and probe the credibility of the witness." Palmigiano v. Baxter, *supra*.

Lastly, defendants were on notice as of June 29, 1973, see Order entered in Danese v. Moriarty,[7] that this court required the basic due process safeguards of notice and confrontation, among others, before inmates could be confined in segregation.

■ Because the procedures employed by defendants fall "so short of the fairness and respect for elementary rights which is at the heart of due process," see Sarzen v. Gaughan, 489 F.2d 1076, 1083 (1st Cir. 1973), the decision of the disciplinary board must be invalidated and plaintiff's prison record ·expunged of all findings and conclusions by that board. Such expungement is required because a prisoner's "disciplinary record may follow him throughout the prison system; if his punishment was without cause, he is punished anew each time his record is used against him. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L. Ed.2d 319 (1967)." Gomes v. Travisono, 490 F.2d 1209, 1213 n. 6 (1st Cir. 1973).

The findings and conclusions of the reclassification hearing, convened and conducted at least in part on the basis of the tainted disciplinary hearing, must similarly be invalidated and expunged from plaintiff's record.

Further, the decision to transfer plaintiff from the relative freedom of the prison farm at M.C.I. Concord to the maximum security of M.C.I. Walpole

was one which markedly changed the status of his confinement as well as his access to ancillary amenities. See Palmigiano v. Baxter, supra, 487 F.2d, at 1284; Nolan v. Scafati, 430 F.2d 548, 550 (1st Cir. 1970). Plaintiff was entitled to at least a minimal level of due process by authorities making such a decision. "[S]ome due process is mandated in all transfer cases." Gomes v. Travisono, supra, 490 F.2d p. 1214.[8]

■ Plaintiff was entitled to such due process whether the decision affecting his status was based on security, rehabilitation or punishment. Palmigiano v. Baxter, supra, 487 F.2d, at 1284; Gomes v. Travisono, supra.

■ The minimal requirements for insuring the integrity of the decision-making process are that the inmate be given prior notice of the contemplated transfer and the reasons therefor, as well as a hearing which provides him with a reasonable opportunity to meet the charges against him. Gomes v. Travisono, supra, 490 F.2d p. 1215. "When a prisoner knows what is happening he can take steps, even before the appointment of counsel becomes constitutionally mandated, to protest obvious errors and to secure the assistance of private counsel, family or friends." Sarzen v. Gaughan, 489 F.2d 1076, 1084 (1st Cir. 1973). Defendants failed to afford plaintiff even these minimal protections, for he was not given notice of the pro-

---

7. By Order dated June 29, 1973 in Danese v. Moriarty, 73–504–T, this court set down the following requirements for hearings to be given to plaintiff-inmates at Walpole confined in segregation:
  1. Prior written notice of the charges;
  2. Opportunity to have the assistance of counsel or a lay advocate in preparation for and during the hearing;
  3. A hearing before an impartial tribunal;
  4. Opportunity to testify, call witnesses, present evidence, and cross-examine persons giving testimony in support of the charges;
  5. Opportunity to record the proceedings by tape recorder or other like device, such recordings to be made a part of the inmate's institutional record;
  6. A decision based on reliable and substantial evidence;

7. Written findings of fact upon which the determination of the decision is based.

8. While Judge Campbell's concurring opinion was limited to out-of-state transfers, see also Slip op. p. 6, at n. 8, the Court's decision was based on the "serious deprivation" analysis of Palmigiano v. Baxter. As such, Gomes would seem to require that some due process attend a decision to transfer from a minimal security prison farm at Concord to the maximum security of Walpole. Moreover, the Court required the increased safeguards of the Morris rules for transfers, like plaintiff's, which are based on the inmate's past misconduct. Gomes, 490 F.2d p. 1215.

posed transfer or reasons therefor prior to the hearing.

■ While the Court of Appeals has carved out an exception to its due process requirements in emergency situations, see *Gomes*, 490 F.2d p. 1215, see also, O'Brien v. Moriarty, 489 F.2d 941 (1st Cir. 1974), there is no evidence before this court to warrant a finding of extreme unrest at the time of plaintiff's transfer. Moreover, even in emergencies, "[d]ue process requires, however, that once the transfer takes place, the inmate be granted at the earliest opportunity the minimal [due process] procedures . . . ." *Gomes*, 490 F.2d p. 1215.

The inmate is not the sole beneficiary of these constitutional guarantees. The public itself has a vital interest and stake in the rehabilitation of prisoners. As a practical matter, rehabilitation is nothing more than a determination by a prisoner to live within our system of law and order. While confined, his only exposure to such a system is that supervised by prison officials. The chances of rehabilitation improve markedly when prisoners become aware and convinced that the system is fair and that it works. Absent such awareness and conviction, the prospects for rehabilitation are painfully obvious.

■ Plaintiff has requested injunctive relief restraining defendants *in futuro* from confining him in segregation or transferring him again without affording him his procedural due process rights. The court concludes, however, that the recent decisions of the Court of Appeals in *Palmigiano* and *Gomes*, establishing explicit due process rules for these prison situations, make such relief unnecessary at this time.

■ Plaintiff's claims for compensatory and punitive damages for violation of his constitutional rights will be referred to the magistrate for findings and recommendations.

The Court orders that the findings and conclusions of the disciplinary board and reclassification board be invalidated and expunged from plaintiff's prison record; and that he be provided with hearings (disciplinary and reclassification) to be conducted in a manner consistent with the provisions of this opinion.[9]

---

9. The magistrate made no findings of fact with respect to plaintiff's allegation that defendant Vinzant prevented counsel from speaking with the plaintiff for a number of days when he was confined in isolation. In view of the Court's order, it is unnecessary to resolve the issue raised by such an allegation. For present purposes it is sufficient to note that prisoners retain their constitutional right to effective assistance of counsel, and the corollary right to free and private communication with counsel. Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); Smith v. Robbins, 328 F.Supp. 162 (D.Me. 1971) (see cases cited at 164), modified in part Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972); Palmigiano v. Travisono, 317 F.Supp. 776, 789 (D.R.I.1970). Any interference with such a basic right bears a heavy burden of justification.

Massachusetts has recognized the sanctity of such a principle as a matter of state policy in Mass.Gen.Laws Ann. Ch. 127 Sec. 36A (1958):

The superintendent shall not abridge the right of an inmate of any correctional or penal institution in the commonwealth to confer with any attorney at law engaged or designated by him, and such attorney may visit such inmate at such times as may be established under rules promulgated by the commissioner.