VOLTERRA, J.
INTRODUCTION
Plaintiff brings this action for declaratory and in-junctive relief, claims for money damages, and for counsel fees and costs of litigation. Plaintiff is an incarcerated inmate presently kept at the Bay State Correctional Center (BSCC) in Norfolk, Massachusetts, a medium security facility (walled). Plaintiff was previously incarcerated at MCI-Lancaster (Lancaster), a minimum security facility (unwalled). Plaintiff is aggrieved as the defendants, all of whom are employees of the Commonwealth, charged with the duty of administering the state’s penal institutions, have, in his view, in one way or another, caused plaintiff to be unlawfully reclassified to a higher level of penal security. Plaintiff invokes the Administrative Procedures Act, G.L.c. 30A; the Declaration of Rights of the Inhabitants of the Commonwealth of Massachusetts; the state civil rights act, G.L.c. 12, §111; and the federal civil rights act, 42 U.S.C. §§1983, 1986, 1988.
Defendants assert that plaintiff has no liberty interest to any particular level of security within the Commonwealth’s penal system under either the state or the federal constitution, and that the transfer of an inmate from one level of security at a penal institution to another level in another prison does not give an aggrieved inmate a right of appeal under the state’s administrative procedure act.
*616 Both parties have moved for summary judgment. Upon consideration of the parties’ arguments during a telephone conference hearing, and after reviewing the briefs and submissions of the parties, I conclude that the plaintiffs allegations are partially meritorious. I render limited relief to the plaintiff for the reasons that follow.
FACTUAL BACKGROUND
Plaintiff is lawfully incarcerated in the state’s penal institution completing a sentence of not less than 46 nor more than 70 years for rape of a child under 16 and robbery. Since his incarceration, plaintiff has been a model inmate. Plaintiff has incurred no disciplinary infractions, demonstrated an excellent work record, adjusted to the prison environment, and participated in prison rehabilitative programs in an exemplary fashion.
In February of 1983, plaintiff was transferred from MCI-Norfolk (Norfolk), a medium custody institution, to BSCC, which at that time, was a minimum custody institution. While at Norfolk, plaintiff held a trustee honor position (minimum security — outside clearance), which allowed him to work outside the walls of Norfolk. His job was processing prisoner’s property.
When BSCC changed its custody status to medium security, plaintiff was transferred to Lancaster, in order to maintain minimum status. Since 1985, plaintiff, as an inmate in minimum security, has participated fully in the furlough program, being granted 103 furloughs, all of which were taken without incident.
In June 1992, he was housed in a single room at Lancaster. There plaintiff worked as a teacher’s assistant and was taking correspondence courses towards self-improvement. Plaintiff was highly trusted by prison administrators.
On July 16, 1991, Lancaster prison administrators approved plaintiffs position for early parole consideration (one third of the minimum sentence) based on his exemplary prison record and in spite of the fact that plaintiff had been convicted of a two-thirds offense. The Parole Board declined to support the prison administrators’ voting to deny Abdullah parole. On June 11, 1992, Lancaster prison administrators voted again to support, by a four to one vote, plaintiffs application for early parole. In spite of the fact that plaintiffs prison conduct had been exemplary, the defendant DuBois, vetoed the Lancaster administrators’ approval of Abdullah’s application for early release.
On June 25, 1992, the Commissioner of Correction, Larry E. DuBois (DuBois) ordered plaintiff transferred to MCI-Concord (Concord) for reclassification, as plaintiff was deemed to be a “security risk.” Nothing in the record justifies such a finding. Moreover, this finding is made by the Commissioner of Correction, a person who at the time of making the finding had no facts before him of any “security” consideration. This finding was made only fourteen calendar days or ten working days from the date when those directly responsible for his day-to-day incarceration had voted four to one to recommend his early parole.
For the first six days of plaintiffs stay at Concord, he was forced to sleep on a concrete floor due to overcrowding at the institution. Plaintiffs reclassification hearing was not held until August 11, 1992. Abdullah was reclassified to medium security and shipped to BSCC. After subsequent transfers, which are not relevant to this case, plaintiff remains at BSCC. He is not currently eligible for parole consideration until July 29, 1996, and his sentence expiration date is not until the year 2035.
CONCLUSIONS OF LAW
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Kourvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Summary judgment is favored where the determinative issue is one of law and not of fact. Theran v. Rokoff, 413 Mass. 590, 591 (1992). “If the non-moving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.” Kourvacilis, 410 Mass. at 715.
On tire basis of the undisputed facts, Defendants Shanessy, Milch, and Vandersea are dismissed as parties to this case. There is no evidence before me which shows that they were responsible for or caused the actions which resulted in the violation of plaintiffs rights.
A. THE DEPARTMENT OF CORRECTION HAS VIOLATED THEIR OWN REGULATIONS.
1. Plaintiff was unlawfully transferred and received an untimely reclassification hearing.
In Massachusetts, as in every other state, prison inmates are protected by the due process clause of the Fourteenth Amendment to the United States Constitution. O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 135 (1993) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). “There is no iron curtain drawn between the Constitution and the prisons of this country.” Wolff, 418 U.S. at 555-56. Prisoners, therefore may not be deprived of life, liberty, or property without due process of law. Id. Administrative agency regulations promulgated pursuant to a legislative grant of power generally have the force of law. Kenney v. Commissioner of Correction, 393 Mass. 28, 33 (1984) (citing Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983)). “Once an agency has seen fit to promulgate regulations, it must comply with those regulations.” Id. “Consequently, individuals within the agency may not arbitrarily disregard agency regulations to the prejudice of a party’s rights.” Kenney, 393 *617 Mass. at 33 (citing Dalomba’s Case, 352 Mass. 598, 603 (1967)).
Plaintiff was transferred to higher custody status because he was deemed a security risk. Because of defendants’ designation of plaintiff, the Code of Massachusetts Regulations, chapter 103, §420.09(3) clearly states that:
(a) Whenever an inmate is considered for transfer to a higher security placement because he is being investigated for possible disciplinaiy offenses, has been charged with a disciplinaiy offense, or has been found guilty of a disciplinary offense; or because of security issues', or due to the inmate’s failure to meet preconditions of his current placement, the inmate shall be afforded a classification hearing. Such a hearing shall normally occur before the inmate’s transfer. However, an inmate may be transferred to a higher security placement prior to such hearing should security needs so dictate. . . .
(b) A hearing shall be held within 20 working days of such a transfer. (Emphasis supplied.)
In Maldonado Santiago v. Velasquez Garcia, 821 F.2d 822, 824 (1st Cir. 1987), the Court of Appeals held that where an inmate was subjected to a prison transfer and a post transfer hearing that failed to comport with the requirements of due process, a due process violation occurred for which at least nominal damages might be recoverable. The rule at issue in that case created an exception whereby inter-prison transfers and intra-prison status changes were to be preceded by administrative hearing, enumerating situations where a prisoner could be transferred without a prior hearing. Id. at 825. The prisoner in Maldonado Santiago was deemed to fall within one of the situations necessitating transfer without prior hearing. Id. at 827. However, the rules required that the administrative hearing must be held within seven working days after the transfer, id. at 825, which did not occur. Id. at 827. The court in Maldonado Santiago found that the mandates of the rule were assimilated into the constitutional requisites of due process. Id. at 827. The court explained that although the Due Process Clause of the Fourteenth Amendment does not by itself endow a prisoner with a protected liberty interest in the security grade or location of confinement, id. (citing Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 226 (1976)), protected due process liberty interests can be created when a state places substantive limitations on official discretion. Id. (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)).
Pursuant to the Code of Massachusetts Regulations, an inmate considered for transfer because of security reasons shall have a hearing prior to transfer. 103 Code Mass. Regs. §420.09. If security needs so dictate, which the evidence does not support in this case, the hearing shall occur within 20 working days after transfer. By my calculations, pursuant to the Department of Correction’s definition of “working day,” 103 Code Mass. Regs. 420.06 (“any day except Saturday, Sunday, a holiday or a ‘floating holiday’ ”). plaintiff received his reclassification hearing 32 working days after his transfer. Thus, I rule that plaintiff was transferred unlawfully, in violation of due process. Even assuming arguendo that security needs dictated his transfer prior to hearing, his classification hearing was clearly untimely, causing further due process violations.
Here, as in the Maldonado Santiago case, The Department of Correction established procedures whereby prisoners subjected to an intentional liberty restriction — transfer—could obtain timely review of the alleged need for their restricted status. Maldonado Santiago, 821 F.2d at 828. I find, as did the Court of Appeals in Maldonado Santiago, that plaintiffs “liberty restriction resulted not from mere negligence but from deliberate action, and the procedural falling lay not in the non-existence of process per se, but in the arbi-traiy withholding of established process that was [his] due entitlement at law.” Maldonado Santiago, 821 F.2d at 828. Mr. Abdullah is seeking vindication of the core concern of the due process clause, namely, process that is due. “To hold otherwise,” the court in Maldonado Santiago recognized,
i.e. to find no cognizable due process deprivation in the lateness of Ms. Maldonado’s rule 22 hearing, would be to assume that the Supreme court has sub silentio overruled a long line of precedent culminating in Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed. 675 (1983), which established the principle that the due process clause prohibits state prison officers from arbitrarily withholding state-created process rights. This would reflect neither a prudent reading of precedent nor a faithful reading of the Constitution. We therefore conclude that Ms. Maldonado’s due process rights were violated by the lateness of her rule 22 hearing.
Maldonado Santiago, 821 F.2d at 828 (emphasis in the original). I similarly rule that plaintiff Abdullah’s due process rights were violated in this case, substantively and procedurally.
Recently, the Supreme Court decided in Sandin v. Conner, U.S., 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), to back away from the methodology enunciated in Hewitt v. Helms, 459 U.S. 460 (1983), that has led petitioners to comb through regulations in order to determine whether mandatory language and substantive predicates create an enforceable expectation that the state would produce a particular outcome with respect to the prisoner’s confinement conditions. Sandin, 115 S.Ct. at 2299, 132 L.Ed.2d at 428. The Sandin Court stated that this was an undesirable procedure for two reasons. One, states would avoid the creation of “liberty” interests by having few regulations and standardless discretion. This creates disincentives for states to codify prison management proce *618 dures in the interest of uniform treatment. Two, it has unnecessarily and inefficiently involved the courts in the day to day management of prisons. Sandin, 115 S.Ct. at 2299, 132 L.Ed.2d at 428-29. The Court held that such test is not any appropriate analysis of regulations guiding correctional officials. Id. at 2299, 132 L.Ed.2d at 429. “The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum.” Id. at 2300, L.Ed.2d at 429. States may create liberty interests in certain circumstances which are created by the Due Process Clause when atypical and significant hardships in relation to the ordinary incidents of prison life are imposed on the inmate. Sandin, 115 S.Ct. at 2301, 132 L.Ed.2d at 430 (emphasis supplied). These interests are generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. Id. at 2300, 132 L.Ed.2d at 430.
I am not persuaded that Sandin would be followed by the Supreme Judicial Court which has repeatedly ruled that the Declaration of Rights gives our people stronger protection than the Federal Constitution. The applicable language of art. 12 of the Massachusetts Declaration of Rights is as follows: “No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel at his election.”
The concepts of art. 12 due process protections are applicable to prison disciplinary proceedings. Murphy v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, 396 Mass. 830, 833 (1986). Similarly, due process protections are evident in the procedures to be followed in the classification hearing to occur prior to transfer. There are few rights that are more fundamental in our jurisprudence than that of the accused to “present. . . [his] version of the facts.” Commonwealth v. Louraine, 390 Mass. 28, 33 (1983). Accordingly, I rule that Mr. Abdullah’s fundamental right to present his version of the facts has been violated as a result of the lack of a proper and timely classification prior to his transfer.
Plaintiff does not have a liberty interest in any particular classification, or in being housed at any particular facility. See, Montanye v. Haymes, 427 U.S. 236, 242 (1976). However, because of the Department of Correction’s regulations, he did have the proper and rational expectation that he would receive a reclassification hearing prior to his transfer, as required by law and the Code of Massachusetts Regulations. G.L.c. 124, §l(c), (f), (g), (q); G.L.c. 127, §§20, 97; 103 Code Mass. Regs. §420.00 et. seq. No inmate should expect that the Department of Correction will violate their own regulations, which have the force of law. I rule that defendants’ unlawful transfer of plaintiff, and the subsequent untimely hearing gave rise to Due Process Clause protections under the Declaration of Rights.
I follow the teaching and spirit of Sandin, Wolff, and Meachum. I do not argue with defendants’ discretion to transfer and reclassify. However, I find that there is no discretion in the regulations concerning the process that is due when such transfers and reclassifica-tions are to occur. The Department of Correction has properly determined what process is due an inmate to be transferred and/or reclassified. See 103 Code Mass. Regs. §420.00 et seq. They cannot now back away from due process in violation of plaintiffs rights. “The touchstone of due process is protection of the individual against arbitrary action of government.” Wolff, 418 U.S. at 558 (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)).
The Supreme Judicial Court has also held that an inmate may not lawfully be transferred to a federal correctional institution in another state unless the department has first afforded the inmate the procedural rights set forth in the department’s regulations concerning the reclassification of inmates to higher custody status. Blake v. Commissioner of Correction, 390 Mass. 537, 537-538 (1983). The inmates in Blake and the present case were transferred, then subsequently reclassified. The distinction between transfers to out of state institutions and higher custody status in state is not controlling.[2] The Supreme Judicial Court then awarded damages based on the §1983 violations. Blake v. Commissioner of Correction, 403 Mass. 764, 766-767 (1989).[3]
2. Decisions to Reclassify
Pursuant to 103 Code Mass. Regs. §420.08(6), (he classification board makes recommendations to the Superintendent concerning an inmate’s placement. This recommendation is based upon all available information relative to the inmate’s security rating, institutional placement and program needs. Id. The goals and objectives of the classification system are aptly stated in 103 Code Mass. Regs. §420.07.[4]
The Sandin court explained that they were backing away from the Hewitt methodology in part, because states were avoiding the creation of liberty interests by having few regulations and standardless discretion. Sandin, 115 S.Ct. at 2299, 132 L.Ed.2d at 429. “An incentive for ruleless prison management disserves the state’s penological goals and jeopardizes the welfare of prisoners.” Id. at 2303, 132 L.Ed.2d at 434 (Ginsburg, J., dissenting). To fit the liberty recognized in our fundamental instrument of government, due process should not depend upon the particularities of the local prison code. Id. at 2303, 132 L.Ed.2d at 434. Rather, there are the basic universal requirements of notice and hearing. Id. at 2303, 132 L.Ed.2d at 434. *619 When there are changes in conditions that are severe, whether or not state law gives state authorities broad discretionary power to impose them, the state authorities may not do so without complying with minimum requirements of due process. Sandin, 115 S.ct. at 2304, 132 L.Ed.2d at 435 (Breyer, Souter, JJ., dissenting) (citing Vitek v. Jones, 445 U.S. 480, 491-494 (1980)); Washington v. Harper, 494 U.S. 210, 221-222 (1990).
The fact that a further deprivation of an inmate’s freedom takes place under local rules that cabin the authorities’ discretionary power to impose the restraint suggests, other things being equal, that the matter is more likely to have played an important role in the life of the inmate (citation omitted). It suggests, other things being equal, that the matter is more likely of a kind to which procedural protections historically have applied, and where they normally prove useful, for such rules often single out an inmate and condition a deprivation upon the existence, or nonexistence, of particular facts ... It suggests, other things being equal, that the inmate will have thought that he himself, through control of his own behavior, could have avoided the deprivation, and thereby have believed that [in the absence of his misbehavior] the restraint fell outside the ‘sentence imposed’ upon him.
Sandin, 115 S.Ct. at 2307, 132 L.Ed.2d at 438-439 (citation omitted).
The discretion of defendants to transfer and classify prisoners is undeniably broad. “Sound discretion, however, imports a judgment based on some substantial reason. It does not consist of a mere arbitrary exercise of the will.” Klein v. Cohen, 304 F.Supp. 275, 277 (D. Mass. 1969). There are certain elements of fundamental fairness long recognized by the courts, and by Massachusetts Correctional authorities. King v. Higgins, 370 F.Supp. 1023, 1027 (D.Mass. 1974).
Unfettered and arbitrary exercises of discretion are violative of the “most basic standards of due process and fundamental fairness.” Id. at 1028. In this case, by way of the regulations, Mr. Abdullah was entitled to certain minimum procedures. These procedures were to ensure that state-created rights were not arbitrarily abrogated. Wolff, 418 U.S. at 557.
Constitutional safeguards are offended when the procedures are based on grounds wholly irrelevant to the state’s objective. MCI Concord Advisory Bd. v. Hall, 447 F.Supp. 398, 405 (D. Mass. 1978) (citation omitted). I do not deny that central to all correctional goals is the institutional consideration of internal security. Id. at 406 (citing Pell v. Procunier, 417 U.S. 817 (1974)). However, restrictions must be rational, not arbitrary or capricious. Id.
The goals of classification are clear. The commissioner, through his acts of discretion, has arbitrarily determined that Mr. Abdullah should be transferred because he was a security risk, and reclassified, because of the nature of his offenses.
The inmate is not the sole beneficiary of these constitutional guarantees. The public itself has a vital interest and stake in the rehabilitation of prisoners. As a particular matter, rehabilitation is nothing more than a determination by a prisoner to live within our system of law and order. While confined, his only exposure to such a system is that supervised by prison officials. The chances of rehabilitation improve markedly when prisoners become aware and convinced that the system is fair and that it works. Absent such awareness and conviction, the prospects for rehabilitation are painfully obvious.
King v. Higgins, supra at 1030. There is no evidence in the record which shows or tends to show that Mr. Abdullah was an escape risk, necessitating transfer and reclassification to higher custody status. Defendants’ action's were taken in clear contradiction to the stated goals and purposes of inmate classification. See 103 Code Mass. Regs. §420.00 et seq. To remove Mr. Abdullah from minimum custody status, where he was an example of a rehabilitation success, and to ship him to medium custody status, where he lost many of the programs that he was flourishing in, is not showing any inmate that the system is fair and that it works. Ordinarily, I would not involve myself in the discretionary actions of the commissioner and department of correction. However, the clear abuse of discretion in this case cannot stand. See Good v. Commissioner of Correction, 417 Mass. 329, 337 (1994). Accordingly, I rule that the arbitrary actions taken against Mr. Abdullah in this case were done so in violation of Abdullah’s due process rights. I will not turn my head from such blatant and arbitrary abuses of discretion. I find the defendant Commissioner’s determination that the plaintiff was a security risk to be arbitrary and capricious, not made upon substantial evidence, and made for external political consumption rather than being based upon any rational classification consistent with the facts at hand respecting this inmate.
B. CLAIMS PURSUANT TO 42 U.S.C. §1983
1. Defendants’ unlawful transfer of plaintiff and failure to provide a timely reclassification hearing reflected a reckless and callous indifference to plaintiffs rights.
Section 1983 provides “(e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parly injured in an action at law, suit in equity, or other proper proceeding for redress . . .’’To maintain an action for damages *620 under §1983, the individual alleged to be liable for damages must have had a personal role in the wrongdoing. Billings v. Commonwealth of Massachusetts, 498 F.Supp. 883, 884 (D. Mass. 1980) (citations omitted). Even if no actual damages are proved, the successful §1983 plaintiff is entitled to nominal damages for due process deprivations. Maldonado Santiago, 821 F.2d at 829. Punitive damages are also available under §1983 when the defendant’s conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Id. (citing Smith v. Wade, 461 U.S. 30, 56 (1983)).
Prison officials and officers may be entitled to a qualified immunity from damages liability under §1983, if they acted with the objective good faith belief that they were not violating the plaintiffs statutory or constitutional rights, as measured by the state of the law when the deprivation occurred. Maldonado Santiago, 821 F.2d at 830 (citations omitted). The determination of objective reasonableness is for the judge to make, not the jury. Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987). A reasonable public official is expected to know the law. Id. “Government officials performing discretionary functions generally are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Maldonado Santiago, 821 F.2d at 830 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)). Thus the only question remaining is whether there was a violation of clearly established constitutional rights. If the law at that time was clearly established, the immunity defense should ordinarily fail, since a reasonably competent public official should know the law governing his conduct. Maldonado Santiago, 821 F.2d at 830 (citations omitted). Thus, defendants cannot claim immunity from damages, unless one or more could show extraordinary circumstances supporting a finding that he neither knew nor should have known of the relevant legal standard. Id. at 831 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)). In this case, there is no shield from liability for defendants’ argued exercise of discretion. I find no discretion in the decision to hold a hearing prior to transfer, or if the exigencies so dictate, within 20 working days. Thus, liability must attach.
A prison official cannot be liable under §1983 for a mere negligent failure to act. He can, however, be liable for a failure to act that reflects a reckless or callous indifference to the rights of the prisoner. Maldonado Santiago, 821 F.2d at 831. Where a cognizable due process deprivation has been proven, the question remains whether the named defendants caused the deprivation, and if so, whether they were sufficiently culpable to be held liable under §1983. Id., footnote 8.
Defendants caused plaintiffs deprivation of rights by taking action to transfer without a proper hearing, and also by failing to act, in that a hearing was not given. I find as a matter of law that the failure to provide plaintiff with a timely hearing reflects a reckless and callous indifference to the rights of Mr. Ab-dullah. The facts of this case lead solely to such a conclusion. An opposite conclusion could only be found if defendants could somehow claim that they are not responsible for having knowledge of the particular laws and regulations. There is no room in this case for a conclusion that defendants had a good faith belief that they were not violating plaintiffs rights when they transferred and reclassified him in contradiction to express regulations.
2. Damages under 42 U.S.C. §1983
The Court in Carey v. Piphus, 435 U.S. 247, 251-52 (1978), held essentially that damages must be quantifiable in order to recover under 42 U.S.C. §1983. Section 1983 is “intended to ‘[create] a species of tort liability’ in favor of persons who are deprived of‘rights, privileges, or immunities secured’ to them by the Constitution.” Carey, 435 U.S. at 253 (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976)). “Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests and their contours are shaped by the interests they protect.” Carey, 435 U.S. at 254. The right to procedural due process is absolute, thus denial thereof is actionable for at least nominal damages, without any proof of injury. Id. at 266. In order to prove actual damages as a result of “procedural irregularities,” one must prove that she actually suffered distress. Id. at 263. “Distress” is determined by looking at the nature and circumstances of the wrong and its effect on the plaintiff. Id. at 264.
In assessing damages to Mr. Abdullah, I have relied on a formula found in Blake v. Commissioner of Correction, 403 Mass. 764 (1989). For each day after plaintiffs unlawful transfer, until his classification hearing (46 calendar days), I award $150 per day, for a total $8,400. I award punitive damages in the sum of $25,000 as I find that defendants’ actions reflect a reckless and callous indifference to plaintiffs rights.
3. Further violations of departmental regulations
Pursuant to 103 Code Mass. Regs. §§920.06(2)(b) and 920.07, inmates shall have access to a bed at above floor level. The court in Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 462 (1990), found that the sheriffs failure to provide beds for all inmates constituted a genuine hardship. The court further stated that the use of floor mattresses constituted punishment, but did not reach the issue of whether floor mattresses would be acceptable in emergency circumstances. Id. at 463, footnote 9.
I find that the distinction between Richardson and the instant case is not controlling, (pretrial detainees and properly convicted inmates) as there is a specific regulation governing the proper conditions in which *621 to house inmates. Where the conditions of confinement amount to genuine privation and hardship, as I find that they do here, I must question whether the conditions were reasonably related to legitimate governmental objectives. Id. at 465-66 (citing Block v. Rutherford, 468 U.S. 576 (1984)). If the conditions are not so related, then the conditions would be in violation of due process rights. Id. at 466 (citing Bell v. Wolfish, 441 U.S. 520 (1979)). I rule that where the plaintiff was unlawfully transferred, there could not possibly be a legitimate governmental objective in forcing plaintiff to sleep on the floor for six nights. Thus, such conditions were a violation of duly promulgated regulations and of plaintiffs due process. For the six nights that defendants’ caused plaintiff to sleep on the floor, I award him a total of $1,500, or $250 per night.
The Superior Court addressed the issue of lack of beds, citing Richardson as well. Cohen v. DiPaolo, 1995 WL 419942, at *6 (Mass.Super. Civ. Action No 93-7314-B, July 13 1995, Suffolk County). “It appears that failure to provide beds could be considered cruel or unusual punishment.” Id. Although, under the Federal Constitution, plaintiff must show a deliberate indifference on the part of prison officials in order for the conditions to constitute an Eighth Amendment violation, there is no “deliberate indifference” requirement under the state constitution, Article 26. Id. at *7, footnote 7, and cases cited. Accordingly, I rule that failure to provide a bed for Mr. Abdullah was cruel and unusual punishment, in violation of art. 26 of the Massachusetts Constitution.
C. CLAIM PURSUANT TO 42 U.S.C. §1986
Chapter 42, §1986 of the United States Code provides that “no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.” Claims based on activity occurring more than one year prior to the filing of the complaint are barred by the one year statute of limitations. Creative Environments, Inc. v. Estabrook, 491 F.Supp. 547, affirmed 680 F.2d 822, cert. denied 103 S.Ct. 345 (D.Mass. 1980). Thus, plaintiffs complaint in so far as it is based on §1986 is dismissed, and defendant is granted summary judgment on this claim.
D. CLAIM PURSUANT TO 42 U.S.C. §1988
42 U.S.C. § 1988(b) provides that “the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.” However, an award of attorney fees to a prisoner appearing pro se in a civil rights action is not appropriate under §1988. Redding v. Fairman, 717 F.2d 1105 (7th Cir. 1983), cert. denied, 104 S.Ct. 1282. See also, Turman v. Tuttle, 711 F.2d 148 (10th Cir. 1983). An award of fees would be appropriate in the case of a pro se litigant where she was using standby counsel, as the purpose of the section is to provide that attorneys are paid, so that civil rights may be vindicated. Miller v. Commissioner of Correction, 36 Mass.App.Ct. 114, review denied, 417 Mass. 1106 (1994).
Thus, plaintiff is not entitled to recover fees as a pro se litigant and summary judgment will enter for defendants as to the §1988 claim for damages.
E. CLAIM PURSUANT TO G.L.c. 12, §111
Under G.L.c. 12, §1II, a person may institute a civil action for injunctive and other appropriate equitable relief, including the award of compensatory money damages when his rights have been interfered with as described in §11H. An aggrieved person shall be further entitled to an award of the costs of the litigation and reasonable attorney’s fees in an amount to be fixed by the court. Such an action may be maintained when a person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth. G.L.c. 12, §11H. “If by clear statutory or regulatory direction Longval was entitled to hearings or determinations by the commissioner that he never received, no discretionary act would be involved in the denial of those rights. Such a violation of Longval’s rights would ‘interfere’ with his ‘enjoyment’ of rights secured to him by the laws of the Commonwealth, within the meaning of those words in G.L.c. 12, §§11H and 111.” Longval v. Commissioner of Correction, 404 Mass. 325, 332 (1989).
Although that court did not rule on whether the conduct of the commissioner would amount to threats, intimidation or coercion, the court suggested that the failure to hold a hearing does not readily compare to the sort of threatening, intimidating, or coercive conduct that would be a violation of the State Civil Rights Act. Longval, 404 Mass. at 333. Further, the court saw no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action. Longval, 404 Mass. at 333.
Accordingly, I rule that although defendants did interfere with plaintiffs rights, there is no evidence that defendants’ actions amounted to threat, intimidation or coercion, amounting to a violation of the State Civil Rights Act. Thus, defendants are granted summary judgment on this claim.
F. CLAIM UNDER THE ADMINISTRATIVE PROCEDURES ACT
Plaintiff contends that defendants violated the notice and public hearing requirements of the State Administrative Procedures Act, G.L.c. 30A, §§1-8, by adapting a policy of general application effecting a *622 substantial and material change in previous Department of Correction policy without public notice or review. Pursuant to G.L.c. 30A, §§1A, 2, the Department of Correction is required to provide notice and public hearing prior to the adoption, amendment, or repeal of any regulation. However, the decision to proceed by regulation or individual adjudication lies primarily in the informed discretion of the administrative agency. Arthurs v. Board of Registration in Medicine, 383 Mass. 299, 313 (1981).
Plaintiffs contention that the defendants’ reclassification of him to higher custody status amounted to the adoption of a new policy has no merit. Plaintiff was reclassified pursuant to the discretion which is afforded to the Commissioner and the Department of Correction. “It is beyond peradventure that prison transfers are within the statutory discretion of the prison administrator. McLaughlin v. Fair, 125 F.R.D. 22, 23 (D.Mass. 1989) (citing Four Certain Unnamed Inmates v. Hall, 550 F.2d 1291, 1292 (1st Cir. 1977)).
Pursuant to G.L.c. 124, §l(g), the Commissioner of Correction has the power to “determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs.” G.L.c. 127, §§20 and 97 afford the commissioner the discretion to transfer “any sentenced prisoner from one correction institution of the commonwealth to another . . .” G.L.c. 127, §97. Thus, I rule that plaintiffs transfer was not the adoption of new policy, but an exercise of discretion. Accordingly defendants are granted summary judgment as to plaintiffs claim of violation of the Administrative Procedure Act, G.L.c. 30A.
G. CLAIMS PURSUANT TO G.L.c. 127, §32
Plaintiff asserts that the removal to higher custody status violates his statutory rights to equal treatment pursuant to G.L.c. 127, §32 and Equal Protection under the Federal Constitution. G.L.c. 127, §32 provides that the prisoners shall be treated with the kindness which their obedience, industry and good conduct merit. The Supreme Judicial Court has interpreted this to mean “to assure equal treatment, as far as may reasonably be, for prisoners who are not being disciplined.’’ Blaney v. Commissioner of Correction, 374 Mass. 337, 341 (1978) (emphasis supplied). “To survive scrutiny under either cause of action, the defendants must demonstrate that their separate treatment of the plaintiffs furthers a legitimate state interest and has a rational basis.” Pina v. DuBois, Civil Action No. 91-5094-H, slip op. at 13 (Mass. Super., Middlesex County, October 31, 1994) (citation omitted). Defendants contend that plaintiffs transfer was a result of the desire to prevent escape, as the plaintiff was going to be denied one-third early parole consideration. The internal security within correctional facilities is central to all correctional goals, and prison officials must be free to take the appropriate actions to ensure the safety of inmates and corrections personnel to prevent escape or unauthorized entry. Id. at 13 (citing Bell v. Wolfish, 451 U.S. 520 (1979)). I thus cannot conclude as a matter of law that defendants’ removal of plaintiff constituted separate treatment, or that their offered explanation was irrational. Thus, defendants are properly entitled to summary judgment on Counts II and IV, in so far as plaintiff alleges a violation of Equal Protection.
Additionally, plaintiff relies on G.L.c. 127, §32 to allege a deprivation of due process. There is no precedent to support plaintiffs assertion that he has a right to due process in order to be treated with kindness. It seems, and precedent supports, that §32 is framed in equal protection language. Plaintiff has no liberty interest in being housed in any particular institution or in any particular classification. Montanye, 427 U.S. at 242. Thus, in so far as plaintiff alleges a due process violation based on §32, the defendants are properly entitled to summary judgment.
H. DENIAL OF MAIL AND VISITATION
Plaintiff alleges in count six that defendants have willfully denied plaintiffs right to receive mail and visits, violating plaintiffs rights to freely associate and express himself pursuant to the First Amendment of the United States Constitution. He also alleges that it violates his mother’s rights and his rights under the Fifth Amendment in that their decision not to allow visitation between plaintiff and his mother was arbitrary and capricious and not based upon any compelling governmental interest or any rational relationship to the purpose and exigencies of imprisonment. As to the alleged violation of his mother’s rights, plaintiff clearly has no standing to assert such violations.
As to any violation of plaintiffs rights, “(i]t is well settled that ‘lawful incarceration brings about the necessaiy withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.’ ” Scarpa v. Ponte, 638 F.Supp. 1019, 1022 (D.Mass. 1986) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974) (quoting Price v. Johnston, 334, U.S. 266, 285 (1948)). In the context of first amendment rights, a prison inmate retains those rights which are not inconsistent with the legitimate penological objectives of the corrections system. Scarpa, 638 F.Supp. at 1026 (citation omitted). Such objectives include, deterrence of crime, rehabilitation, and preservation of internal security. Id. Even viewing the facts in the light most favorable to the plaintiff, there is no evidence in the record to support plaintiffs assertions that defendants willfully withheld mail and visitors and that their decision to do so was arbitrary and capricious. Thus, I rule that defendants are properly entitled to summary judgment on count six.
ORDER FOR JUDGMENT
I ORDER that defendants Shanessy, Milch, and Vandersea are dismissed as parties to this case as *623 there is no evidence in the record which shows that they were responsible for or caused the actions which resulted in the violation of plaintiffs rights.
For the foregoing considerations, as there are no genuine issues as to any material fact and where the plaintiff and defendants are each entitled to summary judgment on some of the claims brought by plaintiff, I ORDER judgment to enter as follows:
On Count III of the plaintiffs complaint in so far as it raises damages claims pursuant to 42 U.S.C. §1983, I enter judgment for the plaintiff. I award damages in the sum of $8,400 for the 46 calendar days after plaintiffs unlawful transfer until his classification hearing, and $1,500 for the six nights that defendants forced plaintiff to sleep on the floor. As I have found that defendants’ actions reflected a reckless and callous indifference to plaintiffs rights, I award punitive damages in the sum of $25,000. The damage award is assessed against defendants who are jointly and severally liable.
On Count III of the plaintiffs complaint, in so far as it raises claims pursuant to 42 U.S.C. §1986,1 ORDER that judgment enter for the defendants as the claims are time barred.
On Count III of the plaintiffs complaint, in so far as it raises claims pursuant to 42 U.S.C. § 1988 regarding the recovery of reasonable attorney’s fees, I ORDER that judgment enter for the defendants as I have found that plaintiff as a pro se litigant is not entitled to recover attorney’s fees.
On Count III of the plaintiffs complaint, in so far as plaintiff seeks recovery under G.L.c. 12, §1II, the State Civil Rights Act, as there were no undisputed facts which demonstrated that the defendant’s conduct amounted to threat, intimidation, or coercion, I ORDER that judgment enter for the defendants.
On Count VII of the plaintiffs complaint which raise claims pursuant to G.L.c. 30A, I ORDER that judgment enter for the defendants as the reclassification of the plaintiff was performed within the discretion afforded the defendant DuBois by the regulations.
On Counts I and IV of the plaintiffs complaint, which raise claims pursuant to G.L.c. 127, §32, I ORDER that judgment enter for the defendants as the conduct of the defendant was within the discretion afforded them by regulations, and the due process claims raised by the plaintiff are not supported by law.
On Count VI of the plaintiffs complaint which raise claims based on the alleged deprivation of plaintiffs rights to receive mail and visits, I ORDER that judgment enter for the defendants as the claims are without merit.
I declare pursuant to the Declaratory Judgment Act, G.L.c. 231A, §1:
a)Defendant Commissioner of Correction Dubois’ finding that plaintiff was a security risk was arbitrary and capricious, and not made upon substantial evidence.
b) Plaintiff was unlawfully transferred.
c) Plaintiff received an untimely reclassification hearing, reflecting a reckless and callous indifference to the rights of Mr. Abdullah.
d) Plaintiffs liberty was unlawfully restricted as a result of the deliberate action on the part of the defendants by arbitrarily withholding established regulatory procedures to which plaintiff was duly entitled by law.
e) Plaintiffs due process rights were violated by the defendants substantively acting arbitrarily and capriciously and by the defendants’ failure to follow the Department of Correction’s own regulations in respect to reclassification and transfer.
f) The Declaration of Rights assures that minimal due process should be accorded state prisoners by an even handed application of the Department of Correction’s own regulations. I declare that there is no discretion in the application of the process that is due Massachusetts state prisoners when transfer and re-classifications occur.
g) Defendants violated plaintiffs due process rights by forcing plaintiff to sleep on the floor for six nights after his unlawful transfer to MCI- Concord. Forcing an inmate to sleep on the floor is considered cruel and unusual punishment. This is a violation of the Department’s regulations as well as art. 26 of the Massachusetts Constitution.

 103 Code Mass. Regs. §420.06 defines “higher security transfer” as the “transfer of an inmate to a correctional facility within Massachusetts whose custody is more secure. A transfer to an out of state or federal facility shall be considered a higher security transfer.[1]’ “When the department is considering the transfer of an individual to a higher custody status, various procedures must be followed before the transfer may be made.” Blake, 390 Mass. at 538. Further, the court in Carlo v. Gunter, 520 F.2d 1293, 1295 (1st Cir. 1975), suggested that the distance of the transfer was not nearly as determinative as the impact on the inmate.

See also, Parenti v. Ponte, 727 F.2d 21, 26 (1st Cir. 1984). “Parenti’s due process rights extended to notice of the impending transfer decision and an opportunity to submit his views opposing the Board’s recommendations to the Commissioner.”

The objectives are identified as follows:
The primary goal of the Massachusetts Department of Correction classification process is to provide a systematic means by which the security requirements and programmatic needs of inmates are assessed in relation to Department rules *624 and regulations, statutory requirements and available resources.
In the process of developing a comprehensive classification system the following objectives have been identified by the department:
(1)Rational methods of assessing the relative needs and risks of each individual inmate with assignment to appropriate agency resources.
(2)Inmates to be placed in the most appropriate level of security required to ensure protection of the public, correctional staff, themselves and other inmates.
(3) Centralized control, monitoring and evaluation of the classification process.
(4)Enhancement of the potential for the inmate’s reintegration to a successful, law abiding community life.
(5)Involvement of the inmate in determining the nature and direction of individualized goals and a mechanism for appealing administrative decisions affecting the inmates.
(6)The collection of factual and quantifiable data to facilitate research.
103 Code Mass. Regs. §420.07.